ALPHA WATTERSON, Plaintiff-Appellee, v. JEFFREY C. MILLER, Director, Illinois Department of Public Aid et al., Defendants-Appellants.

Fourth District   No. 4—83—0034

Opinion filed September 22, 1983.—Rehearing denied October 20, 1983.

Neil F. Hartigan, Attorney General, of Springfield (Leslie J. Rosen, Assistant Attorney General, of counsel), for appellants.

George Bell, of Land of Lincoln Legal Assistance Foundation, Inc., of Champaign, for appellee.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

This appeal presents yet another situation in the seemingly interminable freshet of litigation concerning eligibility for public aid following a declaration of ineligibility under the Federal social security system. The matter has been previously litigated many times. (See *Johnson v. Quern* (1980), 90 Ill. App. 3d 151, 412 N.E.2d 1082; *Carroll v. Miller* (1983), 116 Ill. App. 3d 311.) With the signing by Governor Thompson of Public Act 83—0193 on August 31, 1983, we believe that most of the problems have been laid to rest.

Plaintiff filed a class action suit in the circuit court of Champaign County seeking a *mandamus* against the defendants, the Director of the Illinois Department of Public Aid and the Illinois Department of Public Aid and the Illinois Department of Public Aid (IDPA). In it she alleged that she had applied to IDPA for financial and medical assistance under the Aid to the Aged, Blind and Disabled program (AABD) (Ill. Rev. Stat. 1981, ch. 23, par. 3—1 *et seq.*) and that her application had been approved on a presumptive eligibility basis pending a decision on her claim of disability; she then began receiving financial assistance as well as a medical eligibility card. She further alleged that thereafter an adverse disability determination had been made in her case by the Social Security Administration (SSA). It appeared that such an application to the SSA must be made simultaneously with the application for AABD under the appropriate regulations of IDPA. Upon that determination by SSA, IDPA notified her that it was terminating her assistance under AABD. That notice was sent to her on November 3, 1982; she alleged that within 10 days she appealed that decision under the pertinent regulations of IDPA, but notwithstanding

Rule 7.03 of IDPA, which provides that assistance shall continue during the appeal process if filed within 10 calendar days, her assistance was terminated.

Plaintiff's complaint asked for a judgment of *mandamus* on behalf of herself and all others similarly situated requiring the defendants to continue providing assistance at the level previously in effect pending the results of the appeal hearing to determine the question of disability. The defendants moved to deny class certification and to dismiss the complaint. The parties stipulated that the facts alleged in the complaint were true. The trial court denied both motions. It granted class certification and awarded a judgment of *mandamus* basing its decision principally on *Johnson*. Defendants have appealed, raising as issues the propriety of *mandamus* and the certification of the class action.

■■ The history of the legislation and the interplay between AABD and the Supplemental Security Income program (SSI) of the Federal government have been exhaustively delineated in *Johnson* and *Carroll* and no necessity exists for a vain repetition of it here. Suffice it to say, it was held in *Johnson* that they are separate programs and that a finding under SSI of nondisability does not foreclose assistance under AABD. *Carroll* held that *mandamus* was the proper remedy to obtain assistance during the pendency of the appeal process.

■ As we have intimated above, Public Act 83—0193 has made much of the controversy academic. *Johnson* held that sections 3—1 through 3—12 of the Illinois Public Aid Code (Ill. Rev. Stat. 1981, ch. 23, pars. 3—1 through 3—12) constituted one program and that sections 3—13 through 3—15 of the Code (Ill. Rev. Stat. 1981, ch. 23, pars. 3—13 through 3—15) constituted another and that a finding by the Federal government under the latter was not conclusive of the question of assistance under the former. Public Act 83—0193, which was Senate Bill 1061 in the 83rd General Assembly, added language to sections 3—1, 3—1.2 and 3—4 of the Code as follows:

To section 3—1 (Eligibility Requirements):

"The Illinois Department shall administer a State program under this Article to provide interim assistance to applicants for the federal Supplemental Security Income program who have not received a final determination and certification under this Article."

To section 3—1.2 (Need):

"The Illinois Department may, after appropriate investigation, establish and implement a consolidated standard to deter-

mine need and eligibility for an amount of benefits under this Article or a uniform cash supplement to the federal Supplemental Security Income program for all or any part of the then current recipients under this Article; provided, however, that the establishment or implementation of such a standard or supplement shall not result in reductions in benefits under this Article for the then current recipients of such benefits."

To section 3—4 (Examination as to Disability):

"The Illinois Department may accept determinations as to disability performed under the auspices of the Federal Social Security Administration and properly certified to the Department. The Department shall not consider such determinations final if they have been appealed until a determination is made by an administrative law judge. Furthermore, the Department shall not terminate assistance provided under this Article until there has been such a final determination and certification."

It is at once apparent that these amendments unify the two programs and authorize acceptance of the Federal government's finding of disability.

However, they do not answer all of the questions raised in the instant suit. Section 2 of Senate Bill 1061 provides that it shall take effect upon becoming a law. This occurred on August 31, 1983, upon the signature of the Governor. (Ill. Rev. Stat. 1981, ch. 1, par. 1205.) Therefore, as to all claims arising after that date, the questions presented here cannot arise. As to claims pending before that date, as in the instant case, *Johnson* will control.

■ Public Act 83—0193 also cures some of the problems relating to the class certification. Plaintiff sought relief for herself and for "all persons who, claiming to be disabled, (1) have begun to receive (or do in the future begin to receive) assistance from the defendants pursuant to an application under Article III of The Illinois Public Aid Code (AABD), and (2) have appealed since November 15, 1982 (or do appeal in the future) within 10 days of a notice by the defendants that assistance is being denied because the person has been found to be not disabled." Defendants objected to the entire class certification on two bases: (1) that it included members whose rights have yet to be denied, and (2) that plaintiff had no cause of action.

As to the first objection, including persons in the future, Public Act 83—0193 obviously cures the matter and these persons must be removed from the class. We now do so pursuant to the authority vested in us by Supreme Court Rule 366(a)(5) (87 Ill. 2d R. 366(a)(5)). Those persons who begin to receive assistance after August 31, 1983,

obviously have now their own remedy. The class will remain as described by plaintiff, less those in the future.

As to the second objection, defendants argue that plaintiff had no cause of action because she did not commence her appeal within 10 days of the notice. We do not agree. The parties quarrel over whether the notice was sent by defendant, or received by plaintiff on November 3, 1982. However, that is immaterial because in our opinion time calculated under administrative regulations should be done in the same fashion as for statutes. (Ill. Rev. Stat. 1981, ch. 1, par. 1012.) That law provides:

> "The time within which any act provided by law is to be done shall be computed by excluding the first day and including the last, unless the last day is Saturday or Sunday or is a holiday as defined or fixed in any statute now or hereafter in force in this State, and then it shall also be excluded. If the day succeeding such Saturday, Sunday or holiday is also a holiday or a Saturday or Sunday then such succeeding day shall also be excluded."

As applied to the facts here: November 3 was Wednesday; so 10 days would be computed from Thursday, November 4; the ninth day would be Friday, November 12, and the 10th day Saturday, November 13; that day and the next, Sunday, are excluded under the statute; therefore the 10th calendar day for purposes of IDPA Rule 7.03 was Monday, November 15. The appeal was timely.

■■ The final matter to be disposed of is the type of hearing to which plaintiff is entitled under *Johnson*. This is not spelled out in IDPA's regulations, since the Department has proceeded on the assumption that the Federal hearing was exclusive. In our opinion the hearing by analogy should parallel such a Federal one. The provisions are spelled out in the Code of Federal Regulations (C.F.R.) as follows:

42 C.F.R. sec. 431.205(b)(1982) provides:

> "(b) The State's hearing system must provide for--
>
> (1) A hearing before the agency; or
>
> (2) An evidentiary hearing at the local level, with a right of appeal to a State agency hearing.
>
> ***
>
> (d) The hearing system must meet the due process standards set forth in *Goldberg v. Kelly*, 397 U.S. 245 (1970), and any additional standards specified in this subpart."

42 C.F.R. sec. 431.220 (1982) provides:

> "(a) The agency must grant an opportunity for a hearing to:

(1) Any applicant who requests it because his claim for services is denied or is not acted upon with reasonable promptness; ***."

42 C.F.R. sec. 431.242 (1982) provides:

"The applicant or recipient, or his representative must be given an opportunity to--

* * *

(b) Bring witnesses;

(c) Establish all pertinent facts and circumstances;

(d) Present an argument without undue interference; and

(e) Question or refute any testimony or evidence, including opportunity to confront and cross-examine adverse witnesses."

If these standards are observed, in our opinion a claimant will receive adequate due process.

The order of the circuit court of Champaign County allowing a judgment of *mandamus* is affirmed and the class certification is modified as explained above.

Affirmed as modified.

MILLS and TRAPP, JJ., concur.