JOLENE NUGENT *et al.*, Plaintiffs-Appellees, *v.* JEFFREY C. MILLER, Director, Department of Public Aid, *et al.*, Defendants-Appellants.

Second District   No. 82—937

Opinion filed November 3, 1983.—Rehearing denied December 12, 1983.

Neil F. Hartigan, Attorney General, of Springfield (Katherine M. Marshall and Patrice P. Suberlak, Special Assistant Attorneys General, and Karen Konieczny and Leslie J. Rosen, Assistant Attorneys General, of counsel), for appellants.

Katherine Bissell and William P. Janulis, both of Prairie State Legal Services, of Geneva, for appellees.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The plaintiffs sought a writ of *mandamus* to issue against the Illinois Department of Public Aid (IDPA), its director, and the Kane County Administrator of Public Aid, to compel continuing payment of interim assistance following a finding by the Federal Social Security Administration (SSA) that each of them was not disabled. The trial court issued the writ on the pleadings and the defendants appealed.

The amended complaint alleges that each of the plaintiffs had certain disabilities which each claims to be permanent; that each applied to the IDPA for financial and medical assistance under the Aid to the Aged, Blind and Disabled (AABD) program; that the defendants approved each application for AABD on a presumptive eligibility basis pending a decision on the claim of disability; that thereafter each plaintiff received a notice with the information that the application of AABD had been denied because the party had been determined not disabled by the Social Security Administration; that within 10 days of the denial notice each appealed the decision to the IDPA; that the IDPA refused to continue assistance to each during the processing of the appeal although they allegedly had a clear legal duty to continue assistance under a provision in the IDPA's policy manual, PO—235.4 and under Rule 7.03 of the IDPA.

We first note that similar issues have been ruled upon in other divisions of the Illinois Appellate Court and adversely to the IDPA: *Waterson v. Miller* (1983), 117 Ill. App. 3d 1054; *Carroll v. Miller* (1983), 116 Ill. App. 3d 311. A trial court decision also adverse to the IDPA presently on appeal is Feldman v. IDPA (Docket No. 83—533, 1st

Dist.). *Carroll* and *Waterson* relied on *Johnson v. Quern* (1980), 90 Ill. App. 3d 151, as dispositive.

For reasons which we will state, we do not find that *Johnson v. Quern* is applicable on its facts. Since the record presented in *Johnson* was purely an AABD application, to the extent various conclusions are drawn in the opinion as to the effect of seeking assistance through the Social Security Administration and the mandatory State supplementary payments (SSP), we respectfully disagree.

*Johnson v. Quern* was an administrative review of the decision of the IDPA denying plaintiff's request for disability "under the Illinois program for Aid to the Aged, Blind and Disabled (AABD)," and the court based its decision solely on the application for AABD (90 Ill. App. 3d 151, 152-53). While the court found no explicit record, it said that "every indication" was that Johnson also filed an application with the SSA for supplemental security income (SSI) (42 U.S.C. sec. 1381 (1976)). The *Johnson* court found that the State's AABD program functioned parallel to yet distinct from the Federal SSP or SSI programs. It appears that this result was reached basically because it was conceded by the IDPA that "*** there are people in Illinois who are receiving AABD who are not eligible for one reason or another for either SSP or SSI" (90 Ill. App. 3d, 151, 157). There was no analysis as to whether Johnson was entitled to continuing assistance on a presumptive eligibility status pursuant to Federal statutes.

IDPA concedes here, also, that there are cases in which an applicant does not meet Federal eligibility requirements and is entitled only to AABD relief assistance. It is also clear that AABD regulations provide for continued assistance even after the finding of no disability until the appeal decision is reached. (AABD Categorical Assistance Manual PO—235.4, enacted pursuant to Rule 7.03 of the IDPA.) The IDPA argues, however, that where an applicant meets Federal standards, the application, although it still may be labeled "AABD," is actually to the Social Security Administration for supplemental security income as well as for supplemental security payments from the county public aid department. Thus, IDPA argues, having applied for SSI with Social Security and SSP with the Kane County Department of Public Aid, the plaintiffs were entitled to interim assistance from the State on a presumptive eligibility basis, without a finding of disability, but only until SSA made its initial determination respecting disability.

We are impelled to agree with the defendant's analysis of the legislative scheme. Prior to 1974, State programs were administered and financed by the respective States and supported in part by Federal grants. (Ill. Rev. Stat. 1971, ch. 23, par. 3—1 *et seq.*) Effective in

1974 the Social Security Insurance Program replaced existing State programs of aid to the disabled with a comprehensive Federal system through the SSA (42 U.S.C. sec. 1381 *et seq.* (1976)). To promote uniformity, the Federal SSI program, where applicable, replaced State programs such as AABD. The State did not repeal the statute which created the former AABD program (Ill. Rev. Stat. 1975, ch. 23, pars. 3—13, 3—14, 3—15) and which remained applicable[1] where only the State assistance was sought. We agree, however, with the IDPA that the legislative intent, in those cases in which Federal money was to be received, was that the SSI program amounted to a "take over" of the program by the Federal government and not the creation of a parallel program. The legislative history as stated by Senator Moore:

"This bill is implementing legislation which is needed when the Federal government *takes over* the Old Age, Blind and Disabled category from the State of Illinois on January 1, 1974. Under the bill that was passed there is a basic federal grant that will be payable through the Social Security Administration to all aged, blind and disabled. It provides that a mandatory State supplement insuring to those eligible under the present Aged, Blind and Disabled program shall be paid in January of 1974 at the same rate that they were receiving in December, '73." (Emphasis added.) October 30, 1973, 3rd Special Session, 78th General Assembly, Verbatim Transcript, at 17.

This was reiterated by Representative Campbell when he said that the sections

"set[s] forth the machinery for the Department of Public Aid to work in relationship with the Federal Government in the *take over* of the aid to blind and disabled and also provide[s] for the state to pay supplemental income *** to those recipients ***." (Emphasis added.) November 16, 1973, 2d Special Session, 78th General Assembly, Verbatim Transcript, at 7.

The intention was that the Federal government would "take over" the previous responsibility for providing aid to the aged, blind and disabled to the extent that they were entitled to receive assist-

---

[1]Public Act 83—0193, effective August 31, 1983, not directly applicable to these proceedings, amends sections 3—1, 3—1.2, and 3—4 of the Illinois Public Aid Code (Ill. Rev. Stat. 1981, ch. 23, pars. 3—1, 3—1.2, 3—4). The amendments unify the program and authorize acceptance of the Federal governments' finding of disability. (See *Waterson v. Miller* (1983), 117 Ill. App. 3d 1054.) If an amendment to a statute is enacted shortly after a court's interpretation of a statute "it is logical and reasonable to regard the amendment as a legislative interpretation of the statute it amends." *People v. Rink* (1983), 97 Ill. 2d 533, 541.

ance under the Federal program where supplemental State programs (SSP) were mandated under sections 3—13 and 3—15 of the Illinois Public Aid Code (Ill. Rev. Stat. 1975, ch. 23, pars. 3—13, 3—15). See *Dixon v. Quern* (N.D. Ill. 1982), 537 F. Supp. 983, 987.

While participation in SSP is optional with the States, Illinois, of course, participates in SSP, and it has made the legislative statement that "the Federal Government should meet its obligation to provide financial aid to those aged, blind or disabled persons eligible under Article III hereof so as to assure those persons a standard of living compatible with health and well-being, \* \* \*. The Illinois Department shall institute a State program to fully supplement the Federal Supplemental Security Income grants of all persons in the aged, blind, or disabled categories \* \* \*." Ill. Rev. Stat. 1981, ch. 23, par. 3—13.

The State provides interim assistance presuming eligibility without requiring a finding of disability. The Federal government reimburses the State for one-half the interim funds when the SSA finds the individual eligible for SSI benefits. (42 U.S.C. sec. 1383(g)(1) (1976).) An applicant found "not disabled" may request Social Security to reconsider its decision (20 C.F.R. secs. 416.1408). An applicant who receives an adverse ruling on reconsideration may request a full evidentiary hearing before an administrative law judge (20 C.F.R. secs. 416.1425-416.1429). Social Security provides a hearing *de novo* on the merits of the applicant's disability (20 C.F.R. secs. 416.1441-416.1458). When the finding of nondisability is affirmed, a discretionary appeal may be taken to the Social Security Administration Appeals Council (20 C.F.R. secs. 416.1461-416.1487). The final decision may be judicially reviewed (42 U.S.C. sec. 1383(c)(3) (1976)), and if an administrative law judge reverses the finding of nondisability, the applicant is given SSI retroactively to the date of the application. However, there is apparently nothing in the Federal legislation which gives an SSP applicant presumptive eligibility status when Social Security makes its initial determination of nondisability (IDPA, AABD Categorical Assistance Manual PO—710.1).

Plaintiffs argue that the Federal program is "primary" but not "exclusive," and thus that there are two parallel systems, each of which presumably an applicant could pursue and thus either choose between review before the IDPA, and thereafter presumably administrative review under Illinois law, and a similar review under the Federal administrative procedures. This does not appear to us to be a sensible result, nor can we infer that the legislature intended uncertain consequences. The plaintiffs' argument that because the Federal review apparently takes considerable time, they are therefore entitled

to a State review of the decision finding no disability does not appear persuasive to us.

Plaintiffs have acknowledged that the *Johnson v. Quern* court declined to examine the claims of constitutional rights to a hearing and continuing assistance. The plaintiffs then state that the fourteenth amendment to the United States Constitution and article I, section 2, of the Illinois Constitution of 1970 also support the result. The reasoning is based on the holding that public assistance benefits are property within the meaning of the protection of due process clauses. *Goldberg v. Kelly* (1970), 397 U.S. 254, 261-62, 25 L. Ed. 2d 287, 295-96, 90 S. Ct. 1011, 1017-19.

However, as defendants note, the constitutional issues were not urged in the trial court and the amended complaint does not allege that defendants are constitutionally required to furnish interim assistance. A point not raised in the trial court cannot be urged on appeal. *In re Claudia K.* (1982), 91 Ill. 2d 469, 476; *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147.

For reasons which we have already stated, we do not agree with the plaintiffs' further argument that defendants are collaterally estopped from relitigating a question which has already been decided against them as parties to *Johnson v. Quern*. A collateral estoppel requires an identity of issues between the prior and present suit. *Morris v. Union Oil Co.* (1981), 96 Ill. App. 3d 148, 154. See also *Parklane Hosiery Co. v. Shore* (1979), 439 U.S. 322, 330, 58 L. Ed. 2d 552, 561, 99 S. Ct. 645, 651; *Illinois State Chamber of Commerce v. Pollution Control Board* (1979), 78 Ill. 2d 1, 7.

■ *Mandamus* is an extraordinary remedy to compel the performance of ministerial duties, and the duty resting upon the party must be clear. (*Retail Liquor Dealers Protective Association v. Schreiber* (1943), 382 Ill. 454, 460-61.) Where discretion is permitted *mandamus* cannot be used to compel the method or manner by which a party implements the statutory requirements. (*Chicago Association of Commerce & Industry v. Regional Transportation Authority* (1981), 86 Ill. 2d 179, 185.) We conclude that the right to the writ of *mandamus* is not clear and undeniable and therefore that it was improperly issued.

The judgment of the Circuit Court of Kane County is reversed.

Reversed.

REINHARD and HOPF, JJ., concur.