Docket No. 83203–Agenda 15–May 1998.

GEM ELECTRONICS OF MONMOUTH, INC., Appellant, v. 

 THE DEPARTMENT OF REVENUE, Appellee.

Opinion filed October 22, 1998.

JUSTICE NICKELS delivered the opinion of the court:

At issue in this case is whether the Telecommunications Excise Tax Act (35 ILCS 630/1 
et seq
. (West 1992)) applies to the operation of a community repeater. The Illinois Department of Revenue assessed taxes against Gem Electronics of Monmouth, Inc., under the Telecommunications Excise Tax Act, arising out of its operation of a community repeater. Gem Electronics of Monmouth, Inc. (Gem), sought administrative review of the tax assessment. Following a hearing, the Illinois Department of Revenue (Department) issued a decision upholding the assessment. Gem sought administrative review in the circuit court of Sangamon County. The circuit court set aside the Department's decision, and Department appealed to the appellate court. The appellate court reversed the circuit court, finding Gem liable for the excise taxes. We granted Gem's petition for leave to appeal. 166 Ill. 2d R. 315. We affirm the appellate court and find that operation of a community repeater under the facts in this case falls within the purview of the Telecommunications Excise Tax Act.

I. BACKGROUND

This case involves the application of the Telecommunication Excise Tax Act (the Act) in the setting of two-way FM radio communications through a repeater. The record indicates the following facts. Two-way FM radios are typically used in a combination of a base station and several mobile units. A two-way FM radio, whether a base station or a mobile unit, produces a relatively weak signal. A repeater receives such signals transmitted by a radio, amplifies the signals and allows the signals to be received beyond the original range of the radio. Thus, a repeater effectively extends the distances over which two-way FM radios can communicate.

For example, a taxicab company may maintain contact with its individual cabs via two-way FM radio. The taxicab company would have a dispatcher transmitting signals from a base station. The base station can only transmit over a limited distance and the taxicabs may cover a territory that exceeds that distance. In order to stay in contact with taxicabs that have travelled outside the base station's range, the taxicab company would use a repeater. The repeater would sit on a tower at some point within the range of the base station. It would receive the signals transmitted by the base station, amplify those signals and retransmit the signals to areas outside of the base station's original range. Similarly, the repeater would amplify transmissions from the mobile radios, expanding their range.

Although the Federal Communications Commission (FCC) requires a two-way radio operator to hold a license to operate on a particular frequency, it does not require a repeater operator to secure a license. 47 U.S.C. §301 (1994). Since it is expensive to obtain and maintain a repeater, and because repeaters can operate on several frequencies at once, licensees sometimes share resources. A community repeater is simply a repeater that is operated by a third party or one licensee and used by several licensees. Gem operates a community repeater. Pursuant to contract, customers use the community repeater within their individual frequency and in return pay Gem a flat monthly fee.

During the period from August 1, 1985, through June 30, 1989, Gem received fees from its community repeater service in the amount of $67,044.03. According to Gem, the fees they charged covered only the cost of construction, maintenance and upkeep of the repeater. Gem believed that federal law prohibited it from making a profit on the operation of the repeater. Gem did not register with the Department to collect excise tax from its customers and did not collect any excise tax for use of its repeater during the period at issue. In 1989, the Department conducted an audit of Gem covering the period from August 1, 1985, through June 30, 1989. Based upon the audit, the auditor issued a “Determination of Tax Due” on December 1, 1989. On February 23, 1990, the Department issued a “Notice of Tax Liability” in the amount of $6,099.13 inclusive of the tax, penalties and interest. Gem paid a small amount not in dispute. Later the Department reduced the liability period and agreed to waive late penalties and one half of the interest due if payment was received by July 1, 1991. Gem paid the revised amount of $969.20 under protest on June 19, 1991, and later made an interest payment of $182.67 under protest. Gem sought an administrative hearing from the Department. The hearing was held September 8, 1993. The administrative law judge recommended upholding the assessment.

On June 22, 1994, the Department entered a notice of decision adopting the administrative law judge's recommendation. Gem sought review of the Department's decision in the circuit court in Sangamon County. The circuit court reversed the Department's decision. The Department appealed to the appellate court and Gem cross-appealed claiming attorney fees. The appellate court reversed the circuit court and denied Gem's cross-appeal for attorney fees. We affirm the appellate court.

II. ANALYSIS

Section 16 of the Act sets forth the process for reviewing departmental decisions. 35 ILCS 630/16 (West 1992). Under section 16, the Administrative Review Law (735 ILCS 5/3–101 
et seq
. (West 1992)) applies to judicial review of the Department's final decisions. An agency's findings of fact are held 
prima facie 
true and correct. 735 ILCS 5/3–110 (West 1992). Determination of whether something is subject to tax is a question of law. See 
Thomas M. Madden & Co. v. Department of Revenue
, 272 Ill. App. 3d 212, 215 (1995). An agency's conclusions of law are not binding on a reviewing court. 
Envirite Corp. v. Illinois Environmental Protection Agency
, 158 Ill. 2d 210, 214 (1994). However, based on an agency's experience and expertise, a court may give substantial weight and deference to its interpretation of an ambiguous statute it administers and enforces. 
Bonaguro v. County Officers Electoral Board
, 158 Ill. 2d 391, 398 (1994).

This court's role in interpreting statutes is to give effect to the intention of the legislature and the language of the statute is the starting point of the court's analysis. 
People v. Woodard
, 175 Ill. 2d 435, 443 (1997), citing 
People v. Hare
, 119 Ill. 2d 441, 447 (1988). When the language of the statute is clear and unambiguous, it will be given effect without resort to other tools of construction. 
Woodard
, 175 Ill. 2d at 443. A court should not depart from the language of the statute by reading into it exceptions, limitations or conditions that conflict with the intent of the legislature. 
Bridgestone/Firestone, Inc. v. Aldridge
, 179 Ill. 2d 141, 149 (1997). In addition, we observe that statutes imposing a tax are strictly construed against the government and in favor of the taxpayer. 
Van's Material Co. v. Department of Revenue
, 131 Ill. 2d 196, 202 (1989).

The Telecommunications Excise Tax Act

The appellate court found that community repeaters are taxable under section 3 of the Act. Section 3 of the Act provides in pertinent part:

“A tax is imposed upon the act or privilege of originating or receiving intrastate telecommunications by a person in this State at the rate of 5% of the gross charge for such telecommunications purchased at retail from a retailer by such person.” 35 ILCS 630/3 (West 1992).

The taxpayer under the Act is the person originating or receiving telecommunications. 35 ILCS 630/2(k) (West 1992). A retailer is required to collect the tax from its customers and remit the tax to the Department. 35 ILCS 630/5 (West 1992). Gem's contested liability is for failing to collect and remit the tax due as a retailer under the Act.

The language of section 3 is clear and unambiguous. Three elements must be present for the tax to apply to the gross charge for telecommunications. First, there must be an act or privilege of originating or receiving telecommunications. Second, the telecommunications must be purchased at retail. Finally, the person must purchase the telecommunications from a retailer.

We note at the outset that the court in 
Arenson v. Department of Revenue
, 279 Ill. App. 3d 355 (1996), found that the Act does not apply to the use of repeaters. We reject the reasoning of the 
Arenson 
court.

A. 
Telecommunications

First, we must determine whether Gem's customers originate or receive telecommunications. The Act defines telecommunications as follows:

“ `Telecommunications', in addition to the meaning ordinarily and popularly ascribed to it, includes, without limitation, messages or information transmitted through use of local, toll and wide area telephone service; private line services; channel services; telegraph services; teletypewriter; computer exchange services; cellular mobile telecommunications service; specialized mobile radio; stationary two way radio; paging service; or 
any other form of mobile and portable one-way or two-way communications
; or any other transmission of messages or information by electronic or similar means, between or among points by wire, cable, fiber-optics, laser, microwave, radio, satellite or similar facilities.” (Emphasis added.) 35 ILCS 630/2(c) (West 1992).

Webster's provides the meaning ordinarily and popularly ascribed to telecommunications, defining it as “communication at a distance (as by cable, radio, telegraph, telephone, or television).” Webster's Third New International Dictionary 2349 (1993).

The parties agree that when Gem's customers transmit directly from one radio to another radio without using the repeater, it is considered telecommunications for purposes of the Act. Although it is clear that Gem's customers engage in telecommunication when they transmit and receive information and messages over two-way radios, the telecommunications pertinent to the instant case are only those that are processed by the repeater. Those messages are transmitted by Gem's customers over two-way radios. After being processed by the repeater, Gem's customers receive the messages over other two-way radios. Transmitting messages on one radio and receiving those messages on another radio clearly falls within the definition of telecommunications for purposes of the Act.

Gem argues that the repeater does not fall within the Act's definition of telecommunication. Gem maintains that the legislature excluded community repeaters from the Act by not specifically making reference to them. Although the statute does not list community repeaters, the definition does include “stationary two way radio; *** or any other form of mobile and portable one-way or two-way communications.” At issue here is not whether the repeater itself is telecommunication, but whether Gem's customers originate or receive telecommunications. We find that Gem's customers originate and receive telecommunications.

B. 
Purchase at Retail

The second element of section 3 requires us to determine if Gem's customers purchase telecommunications from Gem at retail. Section 2(j) of the Act defines purchase at retail as: “the acquisition, consumption or use of telecommunication through a sale at retail.” 35 ILCS 630/2(j) (West 1992). Section 2(k) defines “ `[s]ale at retail' ” in pertinent part as: “the transmitting, supplying or furnishing of telecommunications and all services and equipment provided in connection therewith for a consideration ***.” 35 ILCS 630/2(K) West 1992).

Gem argues that it does not transmit telecommunications because it is prohibited from doing so by federal law. 47 U.S.C. §301 (1994). We look instead to whether Gem supplies or furnishes telecommunications. Neither “supply” nor “furnish” is defined in the Act. Undefined terms in a statute must be ascribed their ordinary and popularly understood meaning. 
Texaco-Cities Service Pipeline Co. v. McGaw
, 182 Ill. 2d 262, 270 (1998). Webster's defines supply as “to satisfy a need or desire for: provide or furnish with.” Webster's Third New International Dictionary 2297 (1993). Furnish is defined as “provide or supply with what is needed, useful, or desirable.” Webster's Third New International Dictionary 923 (1993).

Gem sets forth several arguments that it is not making a sale at retail of telecommunications. First Gem asserts that the arrangements it enters into with its customers are leases of space on the repeater and not a sales of service. Our review of the record gives us no reason to disturb the Department's implicit finding that Gem is providing a service and not leasing space on equipment. Gem also argues that a repeater only enhances the strength of signals in the air and therefore Gem does not supply telecommunications. Gem also contends that since its customer owns the radio, controls the facilities and frequencies over which signals are transmitted, and is licensed by the FCC, Gem is not providing the privilege of originating or receiving telecommunications. We find that Gem does supply telecommunications.

It is uncontrovertible that telecommunication that takes place outside the original range of the radios would not be possible absent Gem's provision of repeater services. In fact, Gem's repeater is not only necessary, but is an integral part of long-range radio telecommunications. Therefore, we find that Gem supplies or furnishes telecommunications. Gem charges its customers a fee for the telecommunications it supplies. Consequently, Gem's activities fall within the definition of sale at retail. Accordingly, Gem's customers are purchasing telecommunications at retail.

C.
 From a Retailer

The third element of section 3 is that a person must purchase telecommunications from a retailer. Section 2(l) defines retailer in pertinent part as follows:

“ `Retailer' means and includes every person engaged in the business of making sales at retail as defined in this Article.” 35 ILCS 630/2(l) (West 1992).

Gem asserts that it is not “engaged in the business of making sales at retail,” and is therefore not a retailer. Gem cites 
Valier Coal Co. v. Department of Revenue
, 11 Ill. 2d 402 (1957), and 
Phillips v. Illinois Bell Telephone Co
., 34 Ill. 2d 234 (1966). In 
Valier
, this court held, under the limited facts in that case, that the Valier Coal Company was not engaged in the business of selling tangible personal property for purposes of the Retailers' Occupation Tax Act. 
Valier
, 11 Ill. 2d at 404. In that case, Valier Coal required the permission of the Illinois Public Utilities Commission to complete a sale of coal to its parent company. The commission allowed the sale, but imposed several conditions. Among the conditions were a limitation on the price that Valier could charge and a restriction preventing Valier from selling to the general public.

Gem contends that since Gem's customers must be licensed to transmit signals over a particular frequency, therefore Gem may not sell repeater services to the general public and under 
Valier
, it cannot be “engaged in the business of.” Unlike the restrictions in 
Valier
, however, the FCC's licensing scheme is a limitation on Gem's customers, not upon Gem. Gem further argues that its community repeater is a “private system” because the repeater is not available to the public at large. We are not convinced. An automobile dealer is no less engaged in the business of selling automobiles because his purchasers require a license to operate them.

Gem next argues that the appellate court misapplied the test set forth in 
Phillips
, a Message Tax Act case. Gem's argument rests on its belief that the factors considered in 
Phillips
 constitute a test. On the contrary, the 
Phillips 
court simply noted that there were several factors that distinguished the factual situation at issue in that case from that in 
Liberty National Bank v. Collins
, 388 Ill. 549 (1944), a case that found a landlord engaged “in the business of selling electricity.” 
Phillips
, 34 Ill. 2d at 238. Since Gem raises the argument that it does not meet these factors, we address each of them here. (1) Ownership: Gem does not own the two-way radios but owns the repeater without which the telecommunications at issue would not be possible. (2) Freedom to resell: Gem may sell the service to whomever it desires so long as they are licensed by the FCC. (3) Duty to repair, inspect and maintain: under federal regulations, the ultimate responsibility is on the FCC licensee, not Gem, to insure that the tower to which the repeater is attached meets the FCC's lighting an painting requirements. 47 C.F.R. §90.441 (1995). This factor would weigh in Gem's favor, however the practical effects of that regulation have been questioned by the FCC itself. 
In re Land Mobile Radio Systems
, 71 F.C.C.2d 1391, 1399 (1979). In addition, Gem has a direct relationship with its customers and all of the consideration paid for repeater services belongs to Gem. Based on the evidence before us, we will not overturn the Department's finding that Gem is engaged in the business of making sales at retail.

Vagueness

 Gem argues that the Act is unconstitutionally vague. All statutes are presumed valid and the challenger has the burden of clearly establishing the unconstitutional nature of the statute. 
Opyt's Amoco, Inc. v. Village of South Holland
, 149 Ill. 2d 265, 277 (1992).

Gem argues, using a protracted hypothetical, that a building lessor may be found to be engaged in the business of making sales at retail because he supplies telephone wires within the building he leases. An act is not unconstitutionally vague merely because one can conjure up a hypothetical which brings the meaning of some terms into question. 
Granite City Division of National Steel Co. v. Illinois Pollution Control Board
, 155 Ill. 2d 149, 164 (1993).

Gem also argues that the statute is vague because people of ordinary intelligence cannot know that repeaters are covered by the Act and because the courts below have disagreed as to the meaning of the statute. Gem is not raising a vagueness issue, but merely rephrasing its original contention, that repeaters are not covered by the Act. We find that the Act is not unconstitutionally vague.

Attorney fees

 Gem sought attorney fees in the appellate court under the Illinois Administrative Procedure Act. See 5 ILCS 100/10–55(c) (West 1992). Section 55(c) provides that attorney fees may be recovered by a party who causes an administrative rule to be invalidated. Gem argues that the Department exceeded its statutory authority when it promulgated a rule specifically including retailers who operate or provide radio repeater services in the definition of retailer. 86 Ill. Adm. Code §495.110 (1996). We find the Department did not exceed its statutory authority and therefore we do not invalidate the Department's rule. Accordingly, Gem has not established that it is entitled to attorney fees. We affirm the appellate court's denial of attorney fees.

III. CONCLUSION

For the foregoing reasons, we find that the Act applies to the community repeater services provided by Gem. We affirm the judgment of the appellate court.

Appellate court judgment affirmed.