CHICAGO SCHOOL REFORM BOARD OF TRUSTEES, Petitioner-Appellant, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Respondents-Appellees.

First District (2nd Division)    No. 1—99—1680

Opinion filed September 29, 2000.—Rehearing denied February 9, 2001.

Marilyn F. Johnson, Rochelle Gordon, and Alan L. Hellman, all of Chicago Board of Education, of Chicago, for petitioner.

James E. Ryan, Attorney General (Joel D. Bertocchi, Solicitor General, and A. Benjamin Goldgar, Assistant Attorney General, of counsel), and Lawrence A. Poltrock and Jennifer K. Poltrock, both of Witwer, Poltrock & Giampietro, both of Chicago, for respondents.

JUSTICE COUSINS delivered the opinion of the court:

This action resulted from the termination of Sandra Gordon (Gordon), a tenured teacher who became a "reserve teacher" after the school in which she worked closed in 1991. Gordon was "honorably terminated" in August of 1995. The Chicago Teacher's Union (the Union) filed a grievance against the Chicago School Reform Board of Trustees (the CSRBT) alleging that Gordon's termination violated both Article 42—3 of the *Agreement between the Board of Education of the City of Chicago and the Chicago Teachers Union* (the Agreement) and section 7 of the *Policy Regarding Reassignment and Layoff of Regularly Certified and Appointed Teachers Due to Changes in Staffing Needs* (the Policy). The grievance was denied by the CSRBT. Subsequently, the Union filed an appeal with the CSRBT, which was denied. The Union then filed a demand for arbitration. The arbitrator ordered Gordon's reinstatement. The CSRBT refused to comply with the award and therefore the Union filed an unfair labor practice against the CSRBT. The administrative law judge held that Gordon's layoff pertained to prohibited subjects of bargaining and that the CSRBT did not engage in unfair labor practices by refusing to comply. The Union challenged the administrative law judge's decision before the Illinois Educational Labor Relations Board (the Board). The Board held that the arbitrator's award enforcing the Policy is binding and that the CSRBT violated section 14(a)(8) and, derivatively, section 14(a)(1) of the Illinois Educational Labor Relations Act (the Act) (115 ILCS 5/14(a)(1), (a)(8) (West 1996)).

We affirm.

BACKGROUND

Sandra Gordon, a certified, tenured teacher of over 30 years with the Chicago Board of Education, taught at Irving Park Elementary School for six years until the school closed in June of 1991. Since she had been appointed to her position at Irving Park Elementary and was tenured, she was given the stature of a "reserve teacher" after the school closed. Thereafter, she was assigned to work at a number of different schools on an interim basis.

Article 42, section 3, of the Agreement, which went into effect on August 14, 1995, establishes a policy applicable to reserve teachers. Article 42—3 provides that a reserve teacher is any regularly ap-

pointed teacher "whose service is no longer required in a particular school because of a decrease in membership or a change in subject requirements within the school organization." Article 42—3 of the Agreement further requires placement in a permanent position for any reserve teacher who served in an interim position for more than 60 days. A reserve teacher was to be "honorably terminated from service" if no permanent appointment was made after 25 school months.

Gordon received a termination letter dated August 30, 1995, which stated:

> "According to the personnel records of the Chicago Public Schools, you have been serving the school district as a reserve teacher during the last two years. The 1993-1995 Board/Union Agreement under which you serve specifies (in Article 42, 'Transfer Policy and Procedures') that teachers who have been in a reserve teacher status for more than 25-school months without being appointed to a permanent position shall be honorably terminated from service. Therefore, please be advised that you are no longer an employee of the Chicago Public Schools. Your medical and dental coverage will continue through August 31, 1995."

In October of 1995, the Union filed a grievance on behalf of Gordon alleging that her termination violated both Article 42—3 of the Agreement and section 7 of the Policy. Article 42—3 provides: "Any such reserve teacher whose most recent efficiency rating is satisfactory or better shall be permanently appointed to the position after having served in it on an interim basis for 60 days." Section 7 of the Policy provides: "If the teacher remains in the interim position for more than 60 days, he or she shall be permanently assigned to the position." The Union's grievance was denied by the CSRBT's acting director of labor and employee relations, Jacqueline A. Baker (Baker), on the ground that Gordon had not filled "a teaching position within her area of certification for 60 or more school days." Pursuant to the appeal procedures set forth in Article 3—3 of the Agreement, representatives of the CSRBT and the Union met in joint conference in November of 1995 to review Baker's decision. The CSRBT upheld Baker's decision. In December of 1995, the Union filed a demand for arbitration under the Agreement.

The issues raised at the arbitration hearings included whether the grievance was arbitrable under the Act and whether the CSRBT properly applied its reassignment and layoff policy when it failed to place Gordon in a permanent teaching position. The arbitrator concluded that Gordon qualified for permanent reassignment under section 7 and section 10 of the Policy since she had been assigned to Lowell Elementary school from November 1991 to June 1992, a period

exceeding 60 consecutive days. As noted earlier, section 7 of the Policy provides that, "[i]f the teacher remains in the interim position for more than 60 days, he or she shall be permanently assigned to the position." Section 10 of the Policy provides:

"If a removed teacher's appointment to a vacancy would not be consistent with the Plan to Implement Provisions of Title VI [*sic*] of the Civil Rights Act of 1964, the appointment will not be made unless there is no teacher who holds the appropriate certification available to be appointed consistent with the Plan."

The arbitrator stated:

"Since there is conclusive evidence that the Board unilaterally adopted the Reassignment Policy following the 1995 Amendatory Act, that it did so knowingly and voluntarily, and that it applied this policy to the grievance in every step and procedure leading up to this arbitration, I deny the Board's Motion to Dismiss the grievance on grounds of arbitrability. My ruling is expressly limited to the instant facts, and in no way impairs the Board's right to exercise its statutory rights under the 1995 Amendatory Act."

In June of 1997, the arbitrator ordered reinstatement of Gordon "with back pay and all other benefits lost, less earnings and benefits that the Grievant made during the period of breach."

■ The CSRBT refused to comply with the award. The Union then filed an unfair labor practice charge with the Board. The issue before the administrative law judge (ALJ) was whether the CSRBT violated section 14(a)(8) and, derivatively, section 14(a)(1) of the Act by refusing to comply with the provisions of a binding award. The Illinois Educational Labor Relations Act, sections 14(a)(8) and 14(a)(1), provides:

"(a) Educational employers, their agents or representatives are prohibited from:

(1) Interfering, restraining or coercing employees in the exercise of the rights guaranteed under this Act.

* * *

(8) Refusing to comply with the provisions of a binding arbitration award." 115 ILCS 5/14(a)(1), (a)(8) (West 1996).

■ The ALJ decided that Article 42—3 of the Agreement and the CSRBT Policy are in conflict with sections 4.5(a)(3), 4.5(a)(4), and 4.5(b) of the Act. 115 ILCS 5/4.5(a)(3), (a)(4), (b) (West 1998). Sections 4.5(a)(3), 4.5(a)(4) and 4.5(b) provide:

"§ 4.5. Prohibited subjects of collective bargaining.

(a) Notwithstanding the existence of any other provision in this Act or other law, collective bargaining between an educational employer whose territorial boundaries are coterminous with those of a city having a population in excess of 500,000 and an exclusive

representative of its employees shall not include any of the following subjects:

\* \* \*

(3) Decisions to layoff or reduce in force employees (including but not limited to reserve teachers or teachers who are no longer on an administrative payroll) due to lack of work or funds, including but not limited to decline in student enrollment, change in subject requirements within the attendance center organization, closing of an attendance center, or contracts with third parties for the performance of services, and the impact of these decisions on individual employees or the bargaining unit.

(4) Decisions to determine class size, class staffing and assignment, class schedules, academic calendar, hours and places of instruction, or pupil assessment policies, and the impact of these decisions on individual employees or the bargaining unit.

\*\*\*

(b) The subject or matters described in subsection (a) are prohibited subjects of bargaining between an educational employer and an exclusive representative of its employees and, for the purpose of this Act, are within the sole authority of the educational employer to decide." 115 ILCS 5/4.5(a)(3), (a)(4), (b) (West 1998).

According to the ALJ, Article 42—3 was made "null and void" by section 4.5 of the Act. The ALJ reasoned that section 4.5 gives the CSRBT sole authority to make decisions regarding class staffing and assignments. The ALJ found that Gordon's layoff pertained to a prohibited subject of bargaining within the meaning of sections 4.5(a)(3) and 4.5(a)(4) and that the CSRBT did not engage in unfair labor practices by refusing to reinstate Gordon. In September of 1998 the Union filed a challenge to the ALJ's decision and order.

In review of the decision of the ALJ, the Board analyzed subsections 4.5(a)(3) and 4.5(a)(4) of the Act. In analyzing subsection 4.5(a)(3), the Board stated that, in order for a decision of the CSRBT to lay off or reduce in force employees to be a prohibited subject of bargaining under section 4.5(a)(3), the decision must be due to a lack of work or funds. The Board observed that no argument or evidence was offered to show that Gordon's termination was due to a lack of work or funds.

Also, after analyzing the language of subsection 4.5(a)(4) of the Act, including the placement of punctuation, the Board concluded that the word "class" modifies both "staffing" and "assignment." Relative thereto, the Board stated:

"[Gordon's] grievance was not a matter concerning class staffing and class assignment, which we interpret to mean how a class is *staffed* (one teacher, two teachers working as a team, one teacher

and an aide) or what class is *assigned* to a particular teacher. Whether one has a job is different from which class one is assigned to teach." (Emphasis in original).

The Board found that the CSRBT Policy is not in violation of section 4.5 of the Act, and therefore the arbitrator's award enforcing that Policy is binding. The Board also held that because the CSRBT had failed and refused to comply with a binding arbitration award, it violated section 14(a)(8) of the Act. In April of 1999, the Board issued an opinion and order reversing the ALJ's recommendations and findings. The instant request for review of the Board's decision was filed on May 25, 1999.

We note that section 4.5(c) of the Act provides:

"This Section shall apply to collective bargaining agreements that become effective after the effective date of this amendatory Act of 1995 and shall render a provision involving a prohibited subject in such agreement null and void." 115 ILCS 5/4.5(c) (West 1998).

We also note that the ALJ's recommended decision and order states, in pertinent part:

"Section 4.5 of the Act became effective May 30, 1995. 115 ILCS 5/4.5. The parties' collective bargaining agreement became effective September 1, 1995. Thus, section 4.5 of the Act applies to the parties' collective bargaining agreement."

No issue exists that the CSRBT terminated Gordon's employment prior to September 1, 1995. The parties' collective bargaining agreement became effective September 1, 1995.

■ Neither party has presented argument below or on appeal relative to the consequence of the termination of Gordon's employment prior to the effective date of the collective bargaining agreement. By not presenting an argument pertaining to the collective bargaining agreement having become effective after Gordon's termination, the parties have waived any issue relative thereto. Issues not raised below are considered waived. *Nugent v. Miller*, 119 Ill. App. 3d 382, 387, 456 N.E.2d 640 (1983). Additionally, points not argued in an appellant's brief are waived and shall not be raised in the reply brief. *Sylvester v. Chicago Park District*, 179 Ill. 2d 500, 507, 689 N.E.2d 1119, 1123 (1997). Pursuant to Supreme Court Rule 335 (155 Ill. 2d R. 335), this court has jurisdiction to decide the issues in the instant appeal that have been briefed.

ANALYSIS

I

■ Review of a Board decision on an unfair labor practice charge

must be sought in the appellate court rather than the circuit court. *Board of Education of Du Page High School District No. 88 v. Illinois Educational Labor Relations Board*, 246 Ill. App. 3d 967, 973, 617 N.E.2d 790, 793 (1992). Our review extends to all questions of law and fact presented in the record. 735 ILCS 5/3—110 (West 1994). Where the question involved is one of law, the proper standard of review is *de novo*. *Midwest Central Education Ass'n v. Illinois Educational Labor Relations Board*, 277 Ill. App. 3d 440, 444-45, 660 N.E.2d 151, 154 (1995). An agency's factual findings will not be disturbed unless they are contrary to the manifest weight of the evidence or unless an opposite conclusion is clearly evident. *Midwest Central Education*, 277 Ill. App. 3d at 444, 660 N.E.2d at 154.

## II

■ The policy of this state and the purpose of the Illinois Educational Labor Relations Act are set forth in section 1 of the Act, wherein it is provided, in pertinent part:

> "Recognizing that harmonious relationships are required between educational employees and their employers, the General Assembly has determined that the overall policy may best be accomplished by (a) granting to educational employees the right to organize and choose freely their representatives; (b) requiring educational employers to negotiate and bargain with employee organizations representing educational employees and to enter into written agreements evidencing the result of such bargaining; and (c) *establishing procedures to provide for the protection of the rights of the educational employee, the educational employer and the public.*" (Emphasis added.) 115 ILCS 5/1 (West 1996).

■ The cardinal rule of statutory interpretation is to give effect to the true intent and meaning of the legislature. *People v. Swartwout*, 311 Ill. App. 3d 250, 262, 723 N.E.2d 1256, 1267 (2000). Where the legislature's intent can be ascertained from the plain language of the statute, that intent must prevail and will be given effect without resort to other aids for construction. *Bruso v. Alexian Brothers Hospital*, 178 Ill. 2d 445, 452, 687 N.E.2d 1014, 1016 (1997); *Kunkel v. Walton*, 179 Ill. 2d 519, 534, 689 N.E.2d 1047, 1054 (1997). A basic rule of statutory construction forbids a court to canvass legislative history for evidence of legislative intent if the meaning of a provision can be determined from its text. *Nevitt v. Langfelder*, 157 Ill. 2d 116, 134, 623 N.E.2d 281, 289 (1993).

■ The CSRBT contends that the Board's opinion and order conflicts with sections 4.5(a)(3) and (a)(4) of the Act and ultimately section 10(b) of the Act (115 ILCS 5/10(b) (West 1996)). Section 10(b) of the Act provides:

"(b) The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of Illinois." 115 ILCS 5/10(b) (West 1996).

■ A court should not depart from the language of a statute by reading into it exceptions, limitations or conditions that conflict with the intent of the legislature. *Gem Electronics of Monmouth, Inc. v. Department of Revenue*, 183 Ill. 2d 470, 475, 702 N.E.2d 529, 531 (1998). Since sections 4.5(a)(3) and 4.5(a)(4) of the Act are unambiguous, legislative history should not be consulted and would seemingly be unnecessary to the proper interpretation of the statute. See *Nevitt*, 157 Ill. 2d at 134, 623 N.E.2d at 289.

■ Also, the CSRBT argues that section 4.5(a)(3) of the Act prevented the arbitration of Gordon's grievance. A party cannot be forced to arbitrate a matter that it has not agreed is subject to arbitration. *Board of Governors of State Colleges & Universities v. Illinois Educational Labor Relations Board*, 170 Ill. App. 3d 463, 471, 524 N.E.2d 758, 762 (1988).

■ Section 4.5(a)(3) provides that decisions to lay off or reduce in force employees (including but not limited to reserve teachers or teachers who are no longer on an administrative payroll) due to lack of work or funds, including the closing of an attendance center, are prohibited subjects of collective bargaining. A "lay off" is defined as "[t]he termination of employment at the employer's instigation; esp., the termination—either temporary or permanent—of a large number of employees in a short time." Black's Law Dictionary 896 (7th ed. 1999). The key words in section 4.5(a)(3) are "[d]ecisions to layoff or reduce *** employees *** due to lack of work or funds." 115 ILCS 5/4.5(a)(3) (West 1998). Gordon was not laid off due to either lack of work or funds. The record in the instant case indicates that, at any given time, there are 700 to 1,000 teaching positions available in the system. Further, the record indicates that the CSRBT has not articulated any facts showing that a lack of funds was the basis of the termination.

Moreover, a reading of the CSRBT's termination letter to Gordon shows that Gordon's termination was not the result of the prohibited subjects presented in section 4.5(a)(3). Rather, according to the letter sent by the director of human services of the Chicago public schools, Gordon was terminated because "teachers who have been in a reserve teacher status for more than 25-school months without being appointed to a permanent position shall be honorably terminated from service." The record does not support the CSRBT's contention that

Gordon's termination conformed to the provisions of section 4.5(a)(3). Accordingly, we hold that the arbitration of her grievance was not barred by section 4.5(a)(3).

Another CSRBT contention is that section 4.5(a)(4) of the Act prevented the arbitration of Gordon's grievance. Section 4.5(a)(4) provides that "[d]ecisions to determine class size, class staffing, and assignment" (115 ILCS 5/4.5(a)(4) (West 1998)) are prohibited subjects of collective bargaining. However, in our view, "class staffing and assignment" means *which* class a teacher is assigned to, not whether a teacher is assigned to a permanent position. We agree with the Board's conclusion that the word "class" modifies both "staffing" and "assignment" and that "whether one has a job is different from which class one is assigned to teach." Therefore, we also hold that the arbitration of Gordon's grievance was not barred by section 4.5(a)(4) of the Act.

When considering whether a party has committed the unfair labor practice of refusing to comply with a binding award, the inquiry is limited to whether the award was binding, what the content of the award was, and whether the party has complied with the award. *Board of Education of Du Page High School District No. 88 v. Illinois Educational Labor Relations Board*, 246 Ill. App. 3d 967, 974, 617 N.E.2d 790, 794 (1993). In the instant case, there is no dispute as to the content of the award. Also, no dispute exists as to whether the CSRBT refused to comply with the award. The only issue here is whether the award was binding.

Under section 10(b) of the Act (115 ILCS 5/10(b) (West 1996)), it is a defense to an unfair-labor-practice charge that implementation of the provision in the collective bargaining agreement would be inconsistent with or in conflict with provisions of the School Code (105 ILCS 5/34—1 *et seq.* (West 1996)). *Chicago School Reform Board of Trustees v. Illinois Educational Labor Relations Board*, 309 Ill. App. 3d 88, 93, 721 N.E.2d 676, 680 (1999). Where a provision in a collective bargaining agreement is in violation of or in conflict with any Illinois statute, section 10(b) of the Act prohibits its implementation. *Board of Education of Rockford School District No. 205 v. Illinois Educational Labor Relations Board*, 165 Ill. 2d 80, 88, 649 N.E.2d 369, 372 (1995).

Among the cases cited by the CSRBT to support its position is *Chicago School Reform Board of Trustees v. Illinois Educational Labor Relations Board*, 309 Ill. App. 3d 88, 721 N.E.2d 676 (1999). However, that case is distinguishable. In that case, the CSRBT did not deny that the dismissal of a full-time basis (FTB) substitute teacher was an arbitrable subject. Rather, the CSRBT maintained that it was not bound by an arbitration award ordering reinstatement of a FTB substitute

teacher and that, therefore, the Board incorrectly found that the CSRBT violated section 14(a)(8) and, derivatively, section 14(a)(1) of the Act. *Chicago School Reform Board of Trustees*, 309 Ill. App. 3d at 92, 721 N.E.2d at 680. In that case, this court wrote:

> "[CSRBT] maintains that, pursuant to section 34—8.1 of the School Code (105 ILCS 5/34—8.1 (West 1996)), [CSRBT] has the exclusive authority to terminate the services of a teacher. [CSRBT] also asserts that the arbitrator's decision that Brown be reinstated to the FTB substitute teacher pool conflicted with section 34—8.1 of the School Code. The question then becomes whether section 34—8.1 gives [CSRBT] the exclusive power to discharge FTB substitute teachers and, if so, whether this power prohibits an arbitrator from reinstating such teachers." *Chicago School Reform Board of Trustees*, 309 Ill. App. 3d at 93, 721 N.E.2d at 680.

In that case, this court also concluded that section 34—8.1 of the School Code is ambiguous and, thus, we used extrinsic aids for assistance to determine the legislature's intent. *Chicago School Reform Board of Trustees*, 309 Ill. App. 3d at 95, 721 N.E.2d at 681. However, the instant case is distinguishable. Section 34—8.1 is not the subject of the instant appeal. Rather, in the instant case, the CSRBT contends that sections 4.5(a)(3) and 4.5(a)(4) prohibit the Board from enforcing the arbitration order to reinstate a reserve teacher.

For the foregoing reasons, we hold that the Board did not err in deciding that sections 4.5(a)(3) and 4.5(a)(4) of the Act do not conflict with section 10(b) of the Act, that the arbitrator's award was binding, and that the CSBRT violated section 14(a)(8) of the Act. Accordingly, the decision of the Illinois Educational Labor Relations Board is affirmed.

Affirmed.

GORDON, J., concurs.

PRESIDING JUSTICE CAHILL, dissenting:

I respectfully dissent. The material facts that control this case are undisputed. The law the majority construes in this case took effect May 30, 1995, to apply to collective bargaining agreements entered into after that date. On August 30, 1995, the Board sent Gordon a termination letter specifically referencing a 1993 contract and Article 42 of that contract as the grounds for termination. The 1995 contract, the only one to which Public Act 89—15 could apply, did not take effect until September 1, 1995, a day after Gordon was terminated.

Our supreme court has long adhered to the principle that courts of review will not issue advisory opinions merely to set precedent or

guide future litigation. *Segers v. Industrial Comm'n*, 191 Ill. 2d 421, 428 (2000). Nor do we reach issues not essential to the disposition of the cause before us. *Desnick v. Department of Professional Regulation*, 171 Ill. 2d 510, 541 (1996). An advisory opinion results if the court resolves a question that is not presented by the facts of the case. *People v. Murphy*, 133 Ill. 2d 402, 408 (1990). Put another way, we have no power to declare a rule of law, which cannot affect the result of the case before us, to be a governing principle for future cases. *Board of Trustees, Prairie State College v. Illinois Educational Labor Relations Board*, 173 Ill. App. 3d 395, 413 (1988). Advisory opinions aside, a statute generally has no retroactive effect, and this is particularly true if it is employed to resolve a dispute based on a contract that predates the statute. *First of America Bank v. Netsch*, 166 Ill. 2d 165, 183 (1995).

I do not necessarily disagree with the majority's analysis of Public Act 89—15, but it cannot be used to resolve a dispute arising out of the 1993 contract, even if the parties are eager to know how they should behave in the future. The majority suggestion that none of the parties raised the issue and so waived it is less than persuasive. Principles of waiver apply to the parties, but not to the court. *A.J. Maggio v. Willis*, 316 Ill. App. 3d 1043 (2000).

For these reasons, I respectfully dissent.