BOARD OF EDUCATION OF DU PAGE HIGH SCHOOL DISTRICT No. 88, Petitioner, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Respondents.

First District (2nd Division)   No. 1—91—2801

Opinion filed December 29, 1992.—Modified on denial of rehearing April 27, 1993.

968

Scariano, Kula, Ellch & Himes, Chartered, of Chicago (Justino D. Petrarac, Raymond A. Hauser, and Lisa A. Papacz, of counsel), for petitioner.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Susan Frederick Rhodes, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Educational Labor Relations Board.

Haggerty, Koenig & Hill, Chartered, of Chicago (Kathrin A. Koenig, of counsel), for other respondent.

JUSTICE DiVITO delivered the opinion of the court:

Respondent District 88 Council, Local 571 (the Union), filed a charge with respondent Illinois Educational Labor Relations Board (IELRB), alleging that petitioner Board of Education of Du Page High School District No. 88 (the District) committed an unfair labor practice by refusing to comply with an arbitrator's decision that a grievance arising from the applicable teacher evaluation plan (the Plan) was arbitrable and that arbitration on the merits should follow, in violation of sections 14(a)(1), 14(a)(5), and 14(a)(8) of the Illinois Educational Labor Relations Act (the Act) (Ill. Rev. Stat. 1987, ch. 48, pars. 1714(a)(1), (a)(5), (a)(8)). The District in turn filed a charge against the Union for insisting on arbitrating an inarbitrable issue, in violation of section 14(b)(3) of the Act (Ill. Rev. Stat. 1987, ch. 48,

par. 1714(b)(3)). The IELRB determined that the District had violated the Act, holding that the grievance was arbitrable because the Plan had been collectively bargained or, alternatively, because the grievance concerned a dispute about a violation of a provision in the 1985-88 collective bargaining agreement (the 1985-88 Agreement). For the reasons that follow, we reverse.

The administration of Addison Trail High School issued an "unsatisfactory" evaluation for one of the Union's members at the end of the 1987-88 school year. In response, the Union filed a grievance on the employee's behalf, based on violations of the 1985-88 Agreement and the parties' "understanding and agreement" concerning the Plan.[1] The Union also alleged that the conduct of the school administrators "violate[d] the spirit if not the letter of the [Plan's] process." The Union asked that the unsatisfactory rating be removed.

After a hearing, the principal denied the grievance, stating that it "[did] not identify a violation of the contract. The substance of an evaluation is not grievable under any provision of the [1985-88 Agreement]." The Union appealed, maintaining that the violation of the 1985-88 Agreement was that the employee "was not judged fairly and *** there were numerous violations of the Teacher Evaluation Procedure" of the Plan, in violation of article III.4 of the 1985-88 Agreement.[2] The Union asserted that "this evaluation [was] most reprehensible in its shoddy preparation and basic denial of due process procedural rights." The Union also challenged the District's view that the substance of the evaluation was not grievable, stating that the Plan had been collectively bargained and thus was grievable as "an adjunct part of the [1985-88 Agreement]." It warned that the District's stonewalling could be construed as an unfair labor practice.

After a hearing at the next level, the District's superintendent denied the grievance "for the basic reason that the grievance does not identify a violation of the [1985-88 Agreement]." While maintaining that the Plan had not been collectively bargained and that thus a dis-

---

[1] The evaluation itself is not in the record, but according to the grievance, the evaluation lacked specificity, was "ambiguous and confusing," was based on improper materials, and was conducted without following the Plan's procedures.

[2] Article III.4, entitled "UNION Non-Discrimination," states as follows:
> "There shall be no discrimination against TEACHERS on the basis of UNION membership or lawful UNION activity in evaluation of their service or their qualifications for reappointment or promotion. The BOARD agrees to implement and administer all of its personnel policies, rules, and regulations in a fair, equitable manner."

pute arising therefrom was not grievable, the superintendent nevertheless addressed the merits of the grievance, finding that the evaluation had been conducted within the Plan's guidelines. He also decided that the Union's inability to convince the District to include the Plan in the subsequent collective bargaining agreement (the 1988-1990 Agreement), coupled with its not having filed an unfair labor practice charge against the District for its refusal to include the Plan in the 1988-90 Agreement, constituted waiver.

The Union again appealed; after a hearing, the District concurred in the denial of the grievance for the same reasons given by the superintendent. The Union then demanded arbitration. After an arbitrator had been mutually selected, the District refused to stipulate to the arbitrator's jurisdiction and authority to render an award, based on its position that the grievance was not arbitrable. The Union framed the issue for the arbitrator as "whether the [District] violated the parties['] agreement by it's [sic] failure to fairly and correctly administer the procedures of the *** Plan relative to" the employee's evaluation. Subject to the grievability challenge, the District agreed to submit the issue to the arbitrator.

At the first hearing before the arbitrator in December 1988, the employee testified about the documents and procedure used in his evaluation; the only other witness, Roberta Hollister, the current chief negotiator for the Union, testified about the process by which the Plan evolved. The Union rested its case as to the article III.4 violation. The next hearing did not occur until May 2, 1989. The stipulated facts state that this five-month hiatus was by agreement.

Meanwhile, in April 1989, the District moved to dismiss the arbitration on the ground that the grievance was not arbitrable because the Plan had not been collectively bargained. The arbitrator took the motion under advisement, bifurcated the arbitration, and heard witnesses on this question alone. At this hearing, the testimony concerned only the process by which the Plan had been developed. Witnesses included the Union president at the relevant time; two members of the Union's team to develop the Plan, including the former chief negotiator for the Union, who headed the Union team; and an assistant superintendent, who was part of the administration's team in developing the Plan.[3] The arbitrator asked the parties to sub-

---

[3]During this time, in June 1989, the Union filed an unfair labor practice charge against the District, claiming the District was refusing to arbitrate an arbitrable claim, in violation of sections 14(a)(1) and 14(a)(5) of the Act. The IELRB dismissed the charge; the Union appealed, but it voluntarily dismissed the appeal in 1990.

mit post-hearing briefs by July 31, 1989. The Union did not file its brief until November 1989, but the District made no contemporaneous objection to the Union's untimeliness.

The months passed. In April 1990, the arbitrator asked the parties to brief the effect of two recent IELRB decisions. In submitting its brief, the District stated that it was reserving its right to object to the delay. On April 18, 1990, a few days after the submission of the briefs, the arbitrator ruled that the grievance was arbitrable because the Plan had been collectively bargained, and he ordered the parties to continue the arbitration on its merits.

Shortly thereafter, on May 8, 1990, the Union demanded that the District comply with the arbitrator's decision and commence arbitration on the merits of the grievance. The District refused, claiming that the arbitrator's decision was incorrect as a matter of law, that the cases on which the arbitrator rested his decision were distinguishable, and that the delay in the arbitrator's ruling violated the timeliness requirements of the voluntary arbitration rules of the American Arbitration Association (the AAA). The Union's charge that gives rise to this appeal followed. The District responded with a charge of its own, the mirror image of the Union's, asserting that the Union's demand to arbitrate an inarbitrable issue was an unfair labor practice. The charges were consolidated, and the parties filed a stipulated record containing the submissions to and from the arbitrator.

The IELRB hearing officer ruled for the Union in a 44-page written opinion containing findings of fact and law. She began by noting that the arbitrability question required a two-step analysis: was the Plan bargained and, if so, had the Union nevertheless waived arbitration of disputes concerning it. She found that the Plan had been the product of "the give-and-take typical of labor negotiations in a committee setting" and thus was a collectively bargained agreement. She then rejected the District's argument that the Union had waived its right to arbitrate grievances arising from the Plan. Because the Plan had been collectively bargained and waiver had not occurred, she concluded, the grievance was subject to arbitration. Alternatively, the hearing officer determined that the grievance was also arbitrable as a dispute concerning violation of article III.4 of the 1985-88 Agreement. The hearing officer also rebuffed the District's contention that the time lapse between the hearings and the arbitrator's final decision was so long as to render his decision invalid.

The District filed exceptions, but the IELRB affirmed for the reasons given in the hearing officer's recommended decision, with certain modifications not relevant here. It agreed that the Plan had been col-

lectively bargained, that the IELRB could consider grounds for arbitrability other than that upon which the arbitrator had relied, and that the Union had not waived the right to arbitrate grievances with regard to the Plan. It concluded that the grievance therefore was arbitrable, so the District's refusal to comply with the arbitrator's award concerning substantive arbitrability constituted an unfair labor practice in violation of sections 14(a)(1) and 14(a)(8) of the Act (Ill. Rev. Stat. 1987, ch. 48, pars. 1714(a)(1), (a)(8)).[4] This appeal followed.

## I

■ Review of an IELRB decision on an unfair labor practice charge must be sought in the appellate court rather than in the circuit court. (Ill. Rev. Stat. 1991, ch. 48, par. 1716(a).) In such cases, Supreme Court Rule 335(h) (134 Ill. 2d R. 335(h)) states that certain provisions of the Administrative Review Law (Ill. Rev. Stat. 1991, ch. 110, par. 3—101 *et seq.*) apply. Among these is section 3—110, which describes the scope of our review as follows:

"The hearing and determination shall extend to all questions of law and of fact presented by the entire record before the court. No new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court. The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." Ill. Rev. Stat. 1991, ch. 110, par. 3—110.

■ When operating under this statute, a reviewing court will defer to the agency's factual conclusions, reversing only if the agency's determination is against the manifest weight of the evidence, *i.e.*, no rational trier of fact could have reached the challenged conclusion when looking at the evidence in the light most favorable to the agency; in discretionary matters, reversal may occur only if the agency has exercised its discretion in an arbitrary or capricious manner. (*American Federation of State, County & Municipal Employees v. Illinois Educational Labor Relations Board* (1990), 197 Ill. App. 3d 521, 525, 554 N.E.2d 476, 478.) If the question raised is purely legal, such as statutory construction, an agency's interpretation should receive deference because it flows from its experience and expertise

---

[4]Although the Union's charge also cited a violation of section 14(a)(5) (Ill. Rev. Stat. 1987, ch. 48, par. 1714(a)(5)) for the District's refusal to arbitrate, the IELRB did not include this provision in its complaint.

(*County of Will v. Illinois State Labor Relations Board* (1991), 219 Ill. App. 3d 183, 185, 580 N.E.2d 884, 885), but our review is *de novo*.

Our application of this standard of review is complicated, however, by the nature of the question put to the IELRB, which was whether the District had refused to comply with a binding arbitration award, for "a court's review of an arbitrator's award is extremely limited," and "a court must construe an award, if possible, as valid." (*American Federation of State, County & Municipal Employees v. State of Illinois* (1988), 124 Ill. 2d 246, 254, 529 N.E.2d 534, 537.) The IELRB's review of an arbitration award is similarly constrained. *Board of Education of Danville Community Consolidated School District No. 118 v. Illinois Educational Labor Relations Board* (1988), 175 Ill. App. 3d 347, 353, 529 N.E.2d 1110, 1114 ("Neither IELRB nor reviewing courts have substantial authority to pass upon the propriety of the arbitrator's decision" on a dispute arising from a collective bargaining agreement), *appeal denied* (1989), 124 Ill. 2d 553, 535 N.E.2d 912.

## II

■ Section 14(a)(8) of the Act provides that an educational employer commits an unfair labor practice if it refuses to comply with a binding arbitration award; section 14(a)(1) prohibits such employers from "[i]nterfering, restraining or coercing employees in the exercise of the rights guaranteed under this Act." (Ill. Rev. Stat. 1987, ch. 48, pars. 1714(a)(8), (a)(1).) Under section 10(c) of the Act, one of those rights is to grieve all disputes arising from alleged violations of collectively bargained agreements (Ill. Rev. Stat. 1991, ch. 48, par. 1710(c)), unless the right is waived. When considering whether a party has committed the unfair labor practice of refusing to comply with a binding award, the inquiry is limited to three issues: whether the award was binding; what the content of the award is; and whether the party has complied with the award. (*Board of Education of Danville Community Consolidated School District No. 118 v. Illinois Educational Labor Relations Board* (1988), 175 Ill. App. 3d 347, 349-50, 529 N.E.2d 1110, 1112.) The parties appear to agree that only the first of these is at issue here.

## A

■ The District contends that the IELRB correctly determined that the grievance was arbitrable as a violation of article III.4 of the 1985-88 Agreement. As explained above, article III.4 required the District to "implement and administer all of its personnel policies,

rules and regulations in a fair, equitable manner." Collective bargaining agreements are contracts and, as such, generally are interpreted according to principles of contract law. (*Truck Drivers, Oil Drivers, Filling Station & Platform Workers' Union Local 705 v. Schneider Tank Lines, Inc.* (7th Cir. 1992), 958 F.2d 171, 172 (disputes arising from collectively bargained agreements revolve around contract interpretation), but see *Merk v. Jewel Food Stores* (7th Cir. 1991), 945 F.2d 889, 892, *cert. denied* (1992), 504 U.S. 914, 118 L. Ed. 2d 555, 112 S. Ct. 1951 ("Ordinary common law contract principles *** cannot simply be imported whole into the labor context and mechanistically applied to collective bargaining agreements").) Among such tenets is that if unambiguous, a contract is to be construed according to the plain meaning of its language. *Jewel Cos. v. Serfecz* (1991), 220 Ill. App. 3d 543, 548, 581 N.E.2d 186, 190.

The language of article III.4, as connoted by its title, prohibits discriminatory treatment if connected with union membership; it is not a catch-all prohibition against unfair treatment. Unlike the agreement in a case on which the IELRB relies (see *River Grove School District No. 85½*, 3 Pub. Employee Rep. (Ill.) par. 1019, No. 86—CA—0034—C (Illinois Educational Labor Relations Board, Jan. 30, 1987)), the 1985-88 Agreement contained no general "fairness" provision. Instead, it prohibits discrimination on the ground of union membership. Here, though, the IELRB's ruling was grounded on general fairness and contains no mention of a causal relationship between the employee's union membership and the alleged defects in the evaluation proceedings. Without such supporting evidence, the IELRB's decision that the grievance was arbitrable as a dispute concerning violation of article III.4 of the 1985-88 Agreement was against the manifest weight of the evidence.

B

As its primary holding, the IELRB held that the Plan had been collectively bargained and thus was arbitrable under section 10(c) of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 1710(c)).

The District first contends that the IELRB decision rests on the mistaken assumption that all disputes between educational employers and employees are subject to arbitration even though section 10(c) of the Act provides that only collectively bargained agreements must be arbitrated. The District characterizes the IELRB decision as the result of "a tortured analysis of the facts and a mistaken understanding of the law," asserting that a thorough analysis of the facts surrounding the development of the Plan reveals that the Plan was not

collectively bargained. In particular, the District takes umbrage at the IELRB's conclusion that "[t]he evidence in this case clearly suggests that the give-and-take typical of labor negotiations did occur during the discussions over the [Plan]." The District insists this conclusion is unfounded given its vehement insistence during the relevant time that the process of developing the Plan not be called "negotiating," as well as the correspondence between the Union and the District, which from the outset iterated the District's firm conviction that it had no statutory duty to bargain the Plan.[5] It characterizes the Union's attempt to fashion the facts into collective bargaining rather than cooperation as "slight-of-hand [sic]." The District also posits that the IELRB's finding that the Plan here was collectively bargained is against the manifest weight of the evidence because "[t]he sole basis for this assertion is that '[h]ere the evaluation plan was specifically ratified by the membership of this Union and then adopted by the [District],' " which the District derides as the baseless transmutation of the commonplace act of adopting rules and policy into an intent to enter into a binding agreement. Similarly, in its view, ratification by the Union is not tantamount to collective bargaining.

The IELRB counters that the stipulated facts of "give-and-take," along with ratification of the Plan by the District and the Union, justify its conclusion that the Plan was collectively bargained despite the District's assertions that it had been "dragged kicking and screaming" to the discussions of the Plan. The IELRB urges this court to focus on the District's conduct, not on its words, and it points in support to the designation of representatives by both sides; submission of proposals by each side, with revisions to reflect compromises; debate at 13 meetings; agreement of mutually acceptable terms; inclusion of the agreed-on terms in the final plan; and ratification by each side.

Like the IELRB, the Union argues that when a party's give-and-take conduct conflicts with its statements that it is not bargaining, the actions must control. To the Union, the District's behavior during the Plan's development was identical in nature to its conduct when bargaining other negotiated agreements and thus should be interpreted as collective bargaining because such conduct "evidenced its intent that the Plan be developed by mutual agreement of the parties and then engaged in collective bargaining to achieve that result."

---

[5]Under Article 24A of the School Code (Ill. Rev. Stat. 1991, ch. 122, par. 24A—4), the District must "cooperate in developing" an evaluation plan.

The District's reply may be summed up as "intent controls." Because, in its view, "the evidence indicates that [it] did not intend the discussions to constitute collective bargaining and it is questionable whether the Union so intended," the IELRB's conclusion is unsupported by the record. It points to testimony about the District's letters stating that it was not required to bargain the plan under section 24A of the School Code (Ill. Rev. Stat. 1987, ch. 122, par. 24A—4), and that the District's representatives often reiterated this stance during the meetings. The District also notes that the testimony from even the Union's own witnesses supports its position: for example, one testified that the superintendent had stated that there was no right to bargain the Plan, and another testified that the superintendent "flew off the handle" whenever he heard the word "negotiate." It also points to a memorandum from the District team to the Union team to the same effect. It characterizes the Union's interpretation as "20/20 hindsight," and it terms the IELRB decision as a windfall by which the Union gains a collectively bargained agreement that it could not obtain directly.

■ We first must reject the District's interpretation of the IELRB decision as controlled by an assumption that all disputes between educational employers and employees are subject to arbitration and as lacking thorough factual analysis. Indeed, the very first inquiry the hearing officer addressed was whether the Plan had been collectively bargained, with the caveat that only if this was so would the grievance fall within the presumption of arbitrability, and even then, the presumption would not survive waiver. Only with this analytical framework in mind did the hearing officer begin to consider whether the Plan was arbitrable by first deciding whether it had been collectively bargained. Also, contrary to the District's assertions, the hearing officer specifically stated that the existence of a duty to bargain the Plan was not in question, to which the IELRB later referred in its own ruling. This posture differentiates the case before us from *Alton Community Unit School District No. 11 v. Illinois Educational Labor Relations Board* (1991), 209 Ill. App. 3d 16, 567 N.E.2d 671, in which the cause was remanded to the IELRB because the agency's decision had been affected by its ruling on whether the substantive and procedural provisions of such plans were subject to mandatory bargaining, a question then before our supreme court.

As for the IELRB's conclusion that the Plan was collectively bargained, from the record before us it cannot be gainsaid that the IELRB painstakingly reviewed the testimony and other evidence of the development of the Plan as presented to the arbitrator, as well as

the stipulated facts, before reaching its decision. Nevertheless, even though "the give and take between a committee of representatives from employers and employees which resemble[s] that typical of labor negotiations, can, under some circumstances, constitute collective bargaining" (*Alton*, 209 Ill. App. 3d at 25, 567 N.E.2d at 677), those circumstances did not exist in this case.

■ Here, the testimony from all the witnesses, including the Union's, was that the District was adamant in its refusal to engage in bargaining while it cooperated with the Union in developing the Plan. Not a single witness, even from the Union, testified that he or she had been under the impression that the Plan was being bargained; in fact, the opposite impression was the rule. Furthermore, the evidence here is better characterized as consensus building rather than the give-and-take of negotiation. As a result, not only do we believe that, even looking at the evidence in the light most favorable to the IELRB, no rational trier of fact could have concluded that the Plan had been collectively bargained, but we also believe that such a finding would have a chilling effect on educational employers, who would be compelled to shy away from all but the most limited interaction lest they unintentionally cross the line between "cooperation" and "bargaining." Although the IELRB contends in its petition for rehearing that our opinion is inconsistent with the ruling in *Board of Education, LeRoy Community Unit School District No. 2 v. Illinois Educational Labor Relations Board* (1990), 199 Ill. App. 3d 347, 556 N.E.2d 857, *rev'd on other grounds* (1992), 149 Ill. 2d 496, 599 N.E.2d 892, we agree with *LeRoy* that the conduct of the parties and not just their words must be taken into account when deciding whether the Plan was collectively bargained. We simply find that in looking at the District's conduct here, the employer's conduct in *LeRoy* is sufficiently dissimilar to make *LeRoy* not dispositive here.

We also note in passing that, from the record before us, it appears that the Plan was not signed by the parties, as required by the Act for all collective bargaining agreements. (Ill. Rev. Stat. 1987, ch. 48, par. 1710(d); *Alton*, 209 Ill. App. 3d at 23, 567 N.E.2d at 676.) Accordingly, despite the deference that this court must give to an agency's factual determinations and its interpretation of its statutes, we cannot affirm the IELRB's decision that the Plan was collectively bargained. Thus, we reverse the IELRB's ruling that the District's refusal to comply with the arbitrator's award was an unfair labor practice under section 14(a)(8) of the Act. Furthermore, because the IELRB's finding that the District violated section 14(a)(1) of the Act

appears to have been grounded solely on its finding of the section 14(a)(8) violation, we reverse that ruling as well.

For the reasons stated above, we reverse the IELRB's ruling that the District violated sections 14(a)(8) and, derivatively, 14(a)(1) of the Act. Given this outcome, we need not address the District's arguments that the arbitrator's decision was not binding on the basis of untimeliness, that the Union waived arbitrability of Plan grievances, and that the IELRB may not affirm an arbitrator's decision on a ground other than that used by the arbitrator.

Reversed.

McCORMICK, P.J., and HARTMAN, J., concur.