CENTRAL COMMUNITY UNIT SCHOOL DISTRICT No. 4, Petitioner-Appellant, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Respondents-Appellees.

Fourth District No. 4—08—0303

Opinion filed February 27, 2009.

Larry D. Kuster (argued), of Rammelkamp Bradney, P.C., of Jacksonville, for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Carl J. Elitz (argued), Assistant Attorney General, of counsel), for appellee Illinois Educational Labor Relations Board.

Roger N. Gold, of Law Offices of Roger Gold, Ltd., of Chicago, for appellee Laborers' International Union of North America, Local 751.

JUSTICE MYERSCOUGH delivered the opinion of the court:

In June 2004, petitioner, Central Community Unit School District No. 4 (District), voted to dismiss Quenten Schumacher from his position as head custodian at the high school. Respondent Laborers' International Union of North America, Local 751 (Local 751), filed a grievance on Schumacher's behalf. In September 2006, an arbitrator issued an award reinstating Schumacher to a full-time custodian position and granting back pay, except for the 10 working days of suspension without pay. The District's board of education voted not to comply with the award and refused to reinstate Schumacher with back pay. In December 2006, Local 751 filed an unfair-labor-practice charge with respondent Illinois Educational Labor Relations Board (IELRB). In July 2007, an administrative law judge (ALJ) issued a recommended decision and order which concluded the District violated section 14(a)(8), and derivatively, section 14(a)(1) of the Illinois Educational Labor Relations Act (Act) (115 ILCS 5/14(a)(8), (a)(1) (West 2006)). In April 2008, the IELRB issued a decision affirming the ALJ's recommended decision and order. The District appeals. We reverse and remand with directions.

## I. BACKGROUND

In September 1992, the District hired Quenten Schumacher as a custodian and substitute bus driver. In September 2001, Schumacher was appointed head custodian at the high school.

Local 751 is the exclusive bargaining representative for the bargaining unit comprised of the full- and part-time custodians employed by the District. Local 751 and the District negotiated a collective-bargaining agreement (Agreement) that was in effect during

the relevant time period. Article V governs the District's management rights and states as follows:

"The Employer has and will continue to retain, whether exercised or not, the sole right to operate and manage its affairs in all respects. The powers or authorities, or aspects thereof, which the Employer has not abridged, delegated[,] or modified by the express provisions of this Agreement, are retained by the Employer. The rights of the Employer, through its management officials, shall include, but shall not be limited to, the right to make decisions in the following areas: the right to determine the organization of [the District]; to determine the purpose of each of its service areas; to exercise control and discretion over the organization and efficiency of operations of the Employer, to set standards for services to be offered to the public; to make rules, to direct the employees of the Employer, including the right to assign work, work schedules and work hours; to make assignments of employees pursuant to intergovernmental agreements with other public organizations to hire, examine, promote, train, transfer, assign, and schedule employees in positions with the Employer, to classify positions, to evaluate employees, to suspend, demote, discharge for just cause (see Arcicle VII) or take other disciplinary action against employees; to increase, reduce, change[,] modify, or alter the composition and size of the workforce, including the right to relieve employees; to reclassify positions to a higher or lower classification; to determine the location, methods, means, and personnel by which operations are to be conducted, including the right to determine whether goods or services are to be provided or purchased to establish, modify, combine or abolish job classifications; to eliminate, relocate or transfer work in order to maintain a level of efficiency determined necessary by the Employer; and to change or eliminate existing methods, equipment or facilities. Those inherent managerial functions, prerogatives and policy-making rights that the Employer has not expressly modified or restricted by a specific provision of this Agreement are not subject to the grievance procedure contained herein."

While article V refers to article VII when discussing "just cause," that provision is actually found under article VIII, which governs discipline. The relevant portions of article VIII state the following:

**"8.2 Disciplinary Procedures**

For remediable offenses or remediable violation of work rules, disciplinary action will be progressive and except for gross misconduct, in accordance to the following schedule.

1) Verbal Warning

2) Written Warning

3) One to Ten (10) Day Suspension without Pay

4) Discharge

The above steps in the progressive disciplinary procedure may not be strictly followed depending on the severity of the employee's conduct as determined by the Board of Education/Superintendent.

A custodian may be suspended with pay pending investigation of any matter.

**8.3 Just Cause Termination**

Upon completion of the probationary period, an employee shall be placed on permanent status and may be terminated for cause upon action of the Board of Education. Only discharges are subject to the just cause standard."

Article IX (section 9.3) states that if the issue goes to arbitration:

"The arbitrator's decision shall be binding upon the parties. The arbitrator shall not, however, have the power to add to or to subtract from, alter, or modify in any manner any of the terms of this agreement. His authority shall be strictly limited to deciding only the issues presented to him in writing by the School District and the Union and his decision must be based only upon his interpretation of the meaning or application of the express relevant language of the Agreement."

Relevant portions of section 3 of the District's Educational Support Personnel Handbook (Handbook), which contains general work rules, state:

"33. Employees shall not engage in, while at school, at its sponsored events or during working hours, behaviors which constitute gross disrespect for the property or rights of students, teaching staff, educational support staff, school volunteers or other patrons of the school.

34. Employees shall not use profanity when speaking to students, parents, visitors[,] or other employees. Employees shall not argue in the presence of students.

\* \* \*

48. Repeated minor incidents of misbehavior may be cause for discipline, and if other disciplinary measures have failed to deter misconduct, may result in dismissal."

Several incidents occurred between June 2002 and March 2004 that ultimately led to the District's decision to terminate Schumacher's employment with the District. In June 2002, Schumacher was reprimanded after another school employee heard him refer to Dr. Shari Marshall, the District's superintendent, as a "fucking bitch" after Dr. Marshall instructed Schumacher to set up the auditorium for a speaker.

On December 30, 2002, someone tracked mud across the gym walkway. Schumacher thought it was some of the basketball players

who made the mess and confronted the basketball coach about it in the gym in front of students. Schumacher used profanity during this confrontation, including the term "fuck." On January 7, 2003, Dr. Arlyn Rabideau, the principal of the high school, wrote a letter to Schumacher that set forth what had occurred. The letter indicated Dr. Rabideau and Schumacher discussed the incident on December 31, 2002. Dr. Rabideau informed Schumacher that they "simply [could] not have obscene language confrontations in front of the students" and that he expected this to never happen again. On January 15, 2003, Dr. Marshall sent Schumacher a letter imposing a three-day suspension without pay and informing Schumacker that further "incidents of this nature could result in further discipline or dismissal." Schumacher did not file a grievance over the suspension.

On March 15, 2004, a student spilled milk in the cafeteria. Schumacher told the student to get a mop to clean it up. Several students overheard Schumacher say "stupid son of a bitch."

On March 24, 2004, Schumacher, while driving a bus, observed a student wearing headphones and listening to a compact disc (CD) player. Schumacher stopped the bus, confiscated the CD player and headphones, and threw them in the trash, breaking the CD player.

On April 7, 2004, Dr. Marshall sent Schumacher a memo informing him she had completed her investigation of the March 15 and 24, 2004, incidents. Marshall believed Schumacher said "stupid son of a bitch" after the milk incident but did not believe he directed it at any student. Dr. Marshall informed Schumacher she was recommending that he be demoted from head custodian to custodian in lieu of discharging him. Dr. Marshall stated Schumacher's ability to control his temper was interfering with the performance of his duties. Dr. Marshall noted this was not Schumacher's first time having difficulty with his temper, that he had already received verbal and written warnings as well as a suspension without pay, and the next step would be dismissal. Dr. Marshall encouraged Schumacher to get assistance in anger management and indicated she was willing to assist him in setting up sessions through the employee-assistance program.

On May 25, 2004, Dr. Marshall sent Schumacher a letter which stated the District's Board of Education had agreed to enter into a last-chance agreement in lieu of dismissal. The letter also informed Schumacher he was being reassigned to an elementary school. A copy of the last-chance agreement was attached to the letter. The last-chance agreement required Schumacher to participate in and successfully complete an anger-management course.

On June 3, 2004, Local 751 sent Dr. Marshall a letter and instructed Dr. Marshall to consider it a formal grievance on Schuma-

cher's behalf. Local 751 indicated it (1) believed the District violated the terms of the Agreement when the District demoted Schumacher to custodian at an elementary school, (2) had recommended to Schumacher that he not sign the last-chance agreement, and (3) had requested that the District agree to waive steps one and two of the grievance procedure and agree to proceed to step three, which was arbitration.

On June 9, 2004, Dr. Marshall sent a letter to Schumacher and Local 751 acknowledging receipt of the June 3, 2004, letter. Dr. Marshall indicated the District did not agree to waive steps one and two of the grievance procedure. The District maintained the management-rights clause of the Agreement clearly granted the District the management right to demote an employee. The letter provided notice of a hearing to be held on June 16, 2004, to dismiss Schumacher as a District employee. The basis for the dismissal was that Schumacher had "failed over a period of years to control his anger, failed to properly conduct himself in certain circumstances, including using obscenities in the presence of children and other employees, and poor judgment in performing his duties."

Following the June 16, 2004, hearing, the District terminated Schumacher's employment with the District. Several days later, Local 751 filed a grievance contending the District did not have just cause to terminate Schumacher and the termination was in violation of the Agreement between the District and Local 751. The parties were unable to resolve the dispute over the District's termination of Schumacher's employment and the matter was submitted to arbitration.

On June 7, 2006, an arbitration hearing was conducted before arbitrator Peter Feuille (Arbitrator). The parties stipulated that the issue submitted for resolution should be framed as follows: "Did the District have just cause to terminate [g]rievant Quenten Schumacher in June 2004? If not, what is the appropriate remedy?" The parties agreed the matter was properly at arbitration, subject to the District's preservation of its position that the Arbitrator did not have the power under the Agreement or Illinois law to issue an award that ordered the District to reinstate Schumacher as an employee or award back pay.

In September 2006, the Arbitrator issued an opinion and award in the case. The arbitrator ordered that Schumacher's discipline be reduced to a 10-day suspension and that the District reinstate him as a custodian with back pay and benefits. Later that month, the District's board of education voted not to comply with the Arbitrator's award and refused to reinstate Schumacher as custodian with back pay and benefits.

In December 2006, Local 751 filed an unfair-labor practice charge

against the District. Local 751 alleged the District violated sections 14(a)(1) and 14(a)(8) of the Act. (115 ILCS 5/14(a)(1), (a)(8) (West 2006)) by refusing to comply with a binding arbitration award.

In January 2007, the IELRB issued a complaint and notice of hearing. The parties stipulated to the record and waived a hearing. In July 2007, the ALJ issued a recommended decision and order which affirmed the Arbitrator's award. The District filed exceptions to the ALJ's recommended decision.

In April 2008, the IELRB issued its opinion and order in which it found the District violated section 14(a)(8), and derivatively, section 14(a)(1) of the Act. The IELRB rejected the District's argument that the Arbitrator's award was not binding under section 10(b) of the Act because it conflicted with the School Code (see 105 ILCS 5/1—1 through 36—1 (West 2006)) and was against public policy.

In May 2008, the District filed a petition for review of the IELRB's order with this court.

## II. ANALYSIS

■ Section 14(a)(8) of the Act prohibits educational employers from "[r]efusing to comply with the provisions of a binding arbitration award." 115 ILCS 5/14(a)(8) (West 2006). "However, the refusal to abide by such an award is the accepted and only method of attacking the validity of the award." *Board of Education of Danville Community Consolidated School District No. 118 v. Illinois Educational Labor Relations Board*, 175 Ill. App. 3d 347, 349, 529 N.E.2d 1110, 1112 (1988). The proper procedure for determining whether a party has violated section 14(a)(8) of the Act by refusing to comply with a binding arbitration award requires the consideration of three components: (1) whether the arbitration award is binding, (2) the content of the award, and (3) whether the employer has complied with the award. *Danville Community*, 175 Ill. App. 3d at 349-50, 529 N.E.2d at 1112. Whether the arbitration award is binding is the only issue in this case.

■ The factors considered when determining whether an arbitration award is binding, as explained by the IELRB in *Chicago Board of Education*, 2 Pub. Employee Rep. (Ill.) par. 1089, No. 84—CA—0087—C, at VII—256 (IELRB June 24, 1986), *rev'd in part on other grounds sub nom. Board of Education of the City of Chicago v. Illinois Educational Labor Relations Board*, 170 Ill. App. 3d 490, 524 N.E.2d 711 (1988), is as follows:

> "In determining whether there is a binding arbitration award, we will consider such factors as whether the award was rendered in accordance with the applicable grievance procedure, whether the procedures were fair and impartial, whether the award conflicts with other statutes, whether the award is patently repugnant to

the purposes and policies of the Act, and any other basic challenge to the legitimacy of the award. Otherwise, we shall not redetermine the merits or redetermine the issues presented to the arbitrator."

Also:

"A court's refusal to enforce an arbitrator's award under a collective-bargaining agreement because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy." *Board of Education of School District U-46 v. Illinois Educational Labor Relations Board*, 216 Ill. App. 3d 990, 998, 576 N.E.2d 471, 476 (1991) (hereinafter *District U-46*).

"While there is no precise definition of [']public policy,['] it is to be found in the Constitution, in statutes and, when these are silent, in judicial decisions." *American Federation of State, County & Municipal Employees v. State of Illinois*, 124 Ill. 2d 246, 260, 529 N.E.2d 534, 540 (1988) (hereinafter *AFSCME I*). " ' "The public policy of a State or nation must be determined by its constitution, laws[,] and judicial decisions—not by the varying opinions of laymen, lawyers[,] or judges as to the demands of the interests of the public." ' " *AFSCME I*, 124 Ill. 2d at 260, 529 N.E.2d at 540, quoting *Zeigler v. Illinois Trust & Savings Bank*, 245 Ill. 180, 193, 91 N.E. 1041, 1046 (1910), quoting *Hartford Fire Ins. Co. v. Chicago, M. & St. P. Ry. Co.*, 70 F. 201, 202 (8th Cir. 1895). "Moreover, the public policy must be 'well-defined and dominant' and ascertainable ' "by reference to the laws and legal precedents and not from generalized considerations of supposed public interests." ' [Citation.]" *American Federation of State, County & Municipal Employees v. Department of Central Management Services*, 173 Ill. 2d 299, 307, 671 N.E.2d 668, 673-74 (1996) (*hereinafter AFSCME II*), quoting *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766, 76 L. Ed. 2d 298, 307, 103 S. Ct. 2177, 2183 (1983).

■ The application of the public policy exception involves a two-step analysis. *AFSCME II*, 173 Ill. 2d at 307, 671 N.E.2d at 674. First, the court determines whether a well-defined and dominant public policy can be identified. *AFSCME II*, 173 Ill. 2d at 307, 671 N.E.2d at 674. "If so, the court must determine whether the arbitrator's award, as reflected in his interpretation of the agreement, violated the public policy." *AFSCME II*, 173 Ill. 2d at 307-08, 671 N.E.2d at 674.

In his order, the Arbitrator stated he was only concerned with Schumacher's conduct as custodian because Schumacher had already been removed from his position as bus driver and that he believed any incident that occurred while serving as a bus driver was only relevant to Schumacher's employment with the District as a bus driver, not as

a custodian. In the IELRB's decision, in which it concluded the arbitration award was binding, the IELRB likewise refused to consider Schumacher's conduct as a bus driver and determined the Arbitrator's award did not violate public policy.

In this appeal, the District argues the order reinstating Schumacher is not binding because it (1) violates the well-defined and dominant public policy in favor of the protection of children and (2) conflicts with the School Code.

"Review of an IELRB decision on an unfair[-]labor[-]practice charge must be sought in the appellate court rather than in the circuit court. [Citation.] In such cases, Supreme Court Rule 335(h) (134 Ill. 2d R. 335(h)) states that certain provisions of the Administrative Review Law [citation] apply. Among these is section 3—110, which describes the scope of our review as follows:

'The hearing and determination shall extend to all questions of law and of fact presented by the entire record before the court. No new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court. The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct.' [Citation.]

When operating under this statute, a reviewing court will defer to the agency's factual conclusions, reversing only if the agency's determination is against the manifest weight of the evidence, *i.e.*, no rational trier of fact could have reached the challenged conclusion when looking at the evidence in the light most favorable to the agency; in discretionary matters, reversal may occur only if the agency has exercised its discretion in an arbitrary or capricious manner. [Citation.] If the question raised is purely legal, such as statutory construction, an agency's interpretation should receive deference because it flows from its experience and expertise [citation], but our review is *de novo.*" *Board of Education of Du Page High School District No. 88 v. Illinois Educational Labor Relations Board*, 246 Ill. App. 3d 967, 973-74, 617 N.E.2d 790, 793-94 (1992). "That the administrative decision at issue is a ruling on the validity of the arbitrator's award complicates our review, for 'a court's review of an arbitrator's award is extremely limited,' and 'a court must construe an award, if possible, as valid.' " *Board of Education of Community High School District No. 155 v. Illinois Educational Labor Relations Board*, 247 Ill. App. 3d 337, 344, 617 N.E.2d 269, 276 (1993), quoting *American Federation of State, County & Municipal Employees v. Illinois*, 124 Ill. 2d 246, 254, 529 N.E.2d 534, 537 (1988). "The IELRB's review of an arbitration award is similarly constrained." *Du Page High School*, 246 Ill. App. 3d at 974, 617 N.E.2d at 794.

This is an appeal of an IELRB decision that found the Aribitrator's award was binding. However, because the IELRB's review of an arbitrator's decision is so constrained, the IELRB declined reconsideration of the Arbitrator's decision to exclude Schumacher's actions as a bus driver from consideration.

While this court is reviewing the IELRB's decision, we are cognizant that the IELRB's review of the Arbitrator's decision was very limited. The reason review of an arbitrator's award is limited is "because the parties have chosen by contractual agreement how their dispute is to be decided, and judicial modification of an arbitrator's decision deprives the parties of their choice." *International Ass'n of Firefighters, Local No. 37 v. City of Springfield*, 378 Ill. App. 3d 1078, 1081, 883 N.E.2d 590, 592 (2008). "Because the parties to an arbitration did not bargain for a judicial determination, a reviewing court cannot set aside an arbitration award because of errors in judgment or mistakes of law or fact." *City of Springfield*, 378 Ill. App. 3d at 1081, 883 N.E.2d at 592.

While keeping these considerations in mind, we conclude the IELRB's decision to give no weight to Schumacher's conduct as a bus driver was arbitrary and capricious. By excluding that conduct, the IELRB's review was improperly limited to whether the Arbitrator's award violated a public policy against using profanity in front of children. This was too narrow a look at the public policy at issue. A broader and very important public policy concerning the safety of school children is really what is at issue in this case. See *AFSCME II*, 173 Ill. 2d at 311, 671 N.E.2d at 675 ("the welfare and protection of minors has always been considered one of the State's most fundamental interests"). This general public policy is found in both statutes and case law.

In *AFSCME II*, a Department of Children and Family Services (DCFS) employee, Vera DuBose, stated in a written progress report that in February 1990 she had seen three children involved in a case the employee was assigned to and they were "doing fine." *AFSCME II*, 173 Ill. 2d at 301, 671 N.E.2d at 671. DuBose thereafter transferred to another position and her replacement conducted a follow-up on the children in August 1990, during which the replacement learned the children had died during a January 1990 fire. *AFSCME II*, 173 Ill. 2d at 301, 671 N.E.2d at 671. In October 1991, DCFS notified DuBose she would be discharged within three days for falsification of the progress report and failing to prepare service plans for the children for three years. *AFSCME II*, 173 Ill. 2d at 302, 671 N.E.2d at 671. AFSCME filed a grievance on DuBose's behalf and argued to the arbitrator that DCFS failed to impose discipline in a timely manner and that DCFS

did not have just cause to discharge DuBose. *AFSCME II*, 173 Ill. 2d at 302, 671 N.E.2d at 671. The arbitrator sustained the grievance and reinstated Dubose because (1) DCFS breached the parties' bargaining agreement by not timely disciplining DuBose and (2) the failure to timely impose discipline prevented the arbitrator from addressing the merits. *AFSCME II*, 173 Ill. 2d at 302, 671 N.E.2d at 671.

DCFS did not reinstate Dubose, but instead applied to the circuit court seeking a vacatur of the arbitrator's award. *AFSCME II*, 173 Ill. 2d at 302, 671 N.E.2d at 671. The circuit court agreed with DCFS's position that reinstatement violated the public policy established in the Abused and Neglected Child Reporting Act (see 325 ILCS 5/1 through 11.7 (West 2006)) and remanded for a decision on the merits. *AFSCME II*, 173 Ill. 2d at 302-03, 671 N.E.2d at 671.

On remand, the arbitrator denied the grievance and the circuit court then denied AFSCME's petition to vacate the subsequent arbitration award and confirmed the initial award. *AFSCME II*, 173 Ill. 2d at 303, 671 N.E.2d at 671-72.

The appellate court reversed the circuit court after concluding the time provisions in the Agreement could not be relaxed in favor of public policy. *AFSCME II*, 173 Ill. 2d at 303, 671 N.E.2d at 672. Our supreme court reversed the appellate court and found "there is a well-defined public policy in favor of truthful and accurate DCFS reporting and that the arbitral award in this case violates that policy." *AFSCME II*, 173 Ill. 2d at 308, 671 N.E.2d at 674.

In *District U-46*, the school district's board of education terminated a school bus driver from her position for harassing others, lying to the director of transportation, inappropriate driving tactics, and unsafe and unlawful driving practices. *District U-46*, 216 Ill. App. 3d at 992, 576 N.E.2d at 472. The arbitrator determined no just cause for termination was shown and ordered that the driver be reinstated without back pay. *District U-46*, 216 Ill. App. 3d at 997, 576 N.E.2d at 475. The school district did not comply with the arbitration award. *District U-46*, 216 Ill. App. 3d at 997, 576 N.E.2d at 475. The hearing officer determined the public-policy exception to the enforcement of arbitration awards did not apply under the Act and no well-defined and dominant public policy existed to preclude reinstatement of the bus driver. *District U-46*, 216 Ill. App. 3d at 997, 576 N.E.2d at 475. The Board issued an order adopting the hearing officer's recommended decision and order. *District U-46*, 216 Ill. App. 3d at 997, 576 N.E.2d at 475. The school district appealed and argued there was a public policy in favor of the safe transportation of school children. *District U-46*, 216 Ill. App. 3d at 999, 576 N.E.2d at 476. This court looked at the Illinois Constitution, the School Code, the Illinois Vehicle Code, and the

school district's "Professional Driver's Handbook" and found there was a public policy in favor of the safe transportation of school children. *District U-46*, 216 Ill. App. 3d at 999-1002, 576 N.E.2d at 476-78. The court held the arbitrator's award reinstating the bus driver to her position as school bus driver was contrary to the public policy favoring the safe transportation of school children and reversed the decision of the Board. *District U-46*, 216 Ill. App. 3d at 1006, 576 N.E.2d at 481.

While we recognize *AFSCME II* and *District U-46* both involved specific statutes where the public policy could be found, we find support for the position there is a general policy in favor of the safety of school children in section 24—24 of the School Code. 105 ILCS 5/24—24 (West 2006). Section 24—24 places "teachers, other certificated educational employees, and any other person, whether or not a certificated employee, providing a related service for or with respect to a student" in the relation of parents and guardians to the pupils in all matters relating to discipline and conduct of the schools. 105 ILCS 5/24—24 (West 2006). They are charged with maintaining discipline in the schools. 105 ILCS 5/24—24 (West 2006). This relationship extends to all activities connected with the school and may be exercised at any time for the *safety* and supervision of the pupils in the absence of their parents or guardians. 105 ILCS 5/24—24 (West 2006).

■ Schumacher's conduct as a bus driver is part of the evidence showing he has anger-management issues and that he has, on several occasions, directed his temper at school children. His anger-control issues were further displayed in other incidents at the school when Schumacher was performing his duties as a custodian, although those incidents involving students were verbal in nature. A proper determination of whether the District's termination of Schumacher's employment with the District as a custodian violated the Agreement requires consideration of all of that relevant conduct. Schumacher's conduct in which he displayed his temper toward children while serving in his role as a bus driver is relevant. Terminating Schumacher's employment as a bus driver and reassigning him to a custodian position at the elementary school does not (1) ensure he will have no contact with children or (2) eliminate the possibility he will have another incident involving his temper at or in the presence of children. All relevant evidence must be considered in this case because the safety and protection of school children is at issue. Accordingly, the decision to disregard Schumacher's conduct as a bus driver was arbitrary and capricious and this matter must be remanded for the Arbitrator to consider this evidence in reaching his decision.

## III. CONCLUSION

For the reasons stated, we reverse the IELRB's order and remand to the IELRB with directions to remand this cause to the Arbitrator for reconsideration of whether the District had cause to terminate Schumacher's employment as custodian upon including the evidence of Schumacher's conduct as a school bus driver.

Reversed and remanded with directions.

STEIGMANN and APPLETON, JJ., concur.