# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Griggsville-Perry Community Unit School District No. 4 v. Illinois Educational Labor Relations Board*, 2011 IL App (4th) 110210

| | |
|---|---|
| Appellate Court Caption | GRIGGSVILLE-PERRY COMMUNITY UNIT SCHOOL DISTRICT NO. 4, Petitioner-Appellant, v. THE ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD, and GRIGGSVILLE-PERRY FEDERATION OF SUPPORT PERSONNEL IFT-AFT, LOCAL NO. 4141, Respondents-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-11-0210 |
| Argued | October 12, 2011 |
| Filed | December 19, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from a decision of the Illinois Educational Labor Relations Board adopting an arbitrator's decision directing that petitioner school district reinstate a noncertified paraprofessional with back pay and benefits that may have accumulated, the appellate court reversed the Board's order and directed the Board to enter judgment for the district upholding its decision not to renew the paraprofessional's contract on the ground that the arbitrator's decision went beyond the clear language of the collective bargaining agreement by concluding that the proceeding before the school board was "deficient in the lack of notice, the opportunity to confront and defend, and in the want of a reasoned decision" and that conclusion was clearly erroneous. |

| | |
|---|---|
| Decision Under Review | Petition for review of order of Illinois Educational Labor Relations Board, No. 09-CA-0027-S. |
| Judgment | Reversed. |
| Counsel on Appeal | Larry D. Kuster (argued) and Ryan D. Byers, both of Rammelkamp Bradney, P.C., of Jacksonville, for petitioner. |
| | Gilbert A. Cornfield (argued), of Cornfield & Feldman, of Chicago, for respondent Griggsville-Perry Federation of Support Personnel. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Eric Truett, Assistant Attorney General, of counsel), for respondent Illinois Educational Labor Relations Board. |
| Panel | JUSTICE COOK delivered the judgment of the court, with opinion. Justice Knecht concurred in the judgment and opinion. Justice McCullough dissented, with opinion. |

**OPINION**

¶ 1    On March 7, 2008, Griggsville-Perry Federation of Support Personnel IFT-AFT, Local No. 4141 (the Union), filed a grievance on behalf of its member, Angie Hires, requesting that Griggsville-Perry Community Unit School District No. 4 (the District) allow Hires to continue in her current position with the District. Following a hearing, the arbitrator, Matthew W. Finkin, sustained the grievance and directed that Hires be reinstated with back pay and any benefits that would have accumulated. The District refused to comply with the award, which is the recognized manner in which an employer may challenge the validity of an award. *Central Community Unit School District No. 4 v. Illinois Educational Labor Relations Board*, 388 Ill. App. 3d 1060, 1066, 904 N.E.2d 640, 645 (2009). The Union filed an unfair labor practice charge, but the Illinois Educational Labor Relations Board (IELRB) remanded the matter to the arbitrator to address this court's decision in *Board of Education of Harrisburg Community Unit School District No. 3 v. Illinois Educational Labor Relations Board*, 227 Ill. App. 3d 208, 591 N.E.2d 85 (1992). *Griggsville-Perry Federation of Support Personnel, IFT-AFT, Local No. 4141*, No. 2009-CA-0027-S (IELRB Feb. 22, 2010).

¶ 2      On June 30, 2010, the arbitrator issued an amended arbitration award on remand, again directing that Hires be reinstated with back pay and any benefits that would have accrued. The District again refused to comply with the award. On February 16, 2011, the IELRB issued its opinion and order which is the subject of this appeal, ordering that the District cease and desist from refusing to comply with the arbitration award. *Griggsville-Perry Federation of Support Personnel, IFT-AFT, Local No. 4141*, 27 PERI ¶ 16 (IELRB 2011). On March 10, 2011, the District filed its petition for review in this court, pursuant to Illinois Supreme Court Rule 335 (eff. Feb. 1, 1994), and section 16(a) of the Illinois Educational Labor Relations Act (115 ILCS 5/16(a) (West 2008)), arguing that Hires was an employee at will and the arbitrator exceeded his authority by implying a dismissal standard in the parties' collective-bargaining agreement. We agree and reverse.

¶ 3      I. BACKGROUND

¶ 4      Angie Hires was employed by the District as a noncertified paraprofessional in 1997. In 2003 or 2004, she began working in the media center (library) that served elementary school students. She also assisted at recess and taught keyboarding classes for third and fourth graders. In late January 2007, Hires approached Andrea Allen, the school's principal, about problems Hires was experiencing in her personal life. Hires found Allen to be sympathetic and Allen advised her to seek help. Hires sought marital counseling, which lasted about four months until it was determined that no further counseling was necessary.

¶ 5      In March 2007, Allen asked to speak to Hires. Allen told Hires that some school board members had some concerns and that Hires needed "to smile more." Allen kept a spiral-bound notebook in which she made a number of entries regarding Hires. Those entries are summarized as follows: March 9, 2007, spoke with Hires regarding her attitude; March 22, 2007, spoke with Hires regarding her attitude, she said she would strive to do better; April 30, 2007, talked to Hires again, she said she would try; October 2, 2007, Hires having trouble at home, not sleeping, cannot eat, feels terrible, Allen suggested lights off in media center; October 8, 2007, Hires no better; October 22, 2007, appointment with therapist; November 6, 2007, another teacher requested her students not be forced to have keyboarding, negativity all the time from Hires; November 13, 2007, parent's complaint that Hires did not treat kids equally and fairly.

¶ 6      Hires' official personnel file contained the following three notes written by Allen: March 9, 2007, "Spoke w/ Angie re: –smiling, treating kids nicer, etc.–let her know that bd. mbrs. had concerns." April 28, 2007, "Reminded Angie, treatment of students still needs work." October 18, 2007, "Spoke w/ Angie attitude."

¶ 7      In February 2008, the District's school board held a closed executive session. During that meeting, school board members asked Allen whether she had a strong concern about anyone. Allen responded she was concerned about Hires and recommended Hires be terminated. Allen discussed the notes in her notebook with the school board. The school board also informed Allen that it had directly received complaints about Hires.

¶ 8      On February 2, 2008, Superintendent of Schools Mike Davies informed Hires that her employment would be terminated by the school board at its meeting on March 19. The

superintendent wrote:

> "While reasons for non-renewal of employment are not legally required, we nevertheless want to advise you as to the deficiencies in your job performance that has led to this decision. It had been brought to your attention on various occasions over this school year and in previous school years that you do not relate well with elementary students you serve as a library assistant in the Media Center. You are not always pleasant with the elementary students. This pattern of conduct has not improved.

> If you desire to appear before the Board of Education at its March 19, 2008, meeting *** and respond to these deficiencies, please contact [the superintendent] in writing *** to request a pre-termination hearing."

¶ 9 On March 3 or 4, 2008, Allen and Superintendent Davies met with Hires, who was accompanied by Fran Schaller, the local Union president. Hires requested access to her personnel file. Schaller testified that the file Hires received initially contained nothing related to Hires' job performance. Upon inquiry, Allen's three notes from March 8, April 28, and October 18, 2007, were then produced.

¶ 10 Hires responded through her Union president in a letter dated March 7, 2008, to Superintendent Davies, disputing the allegations of poor job performance and filing a grievance over the matter. The Union complained Hires received no notice of the "remarks" about her performance that were placed in her personnel file and which formed the basis for her dismissal. It alleged Hires was denied the opportunity to attach dissenting or explanatory material to those "remarks" or to correct any deficiencies. On March 13, 2008, a meeting took place. Schaller and Hires were given a letter, stating the Union's grievance had been denied and setting the time for Hires' pretermination hearing as the date of the March 19, 2008, school board meeting. The letter attached copies of the pages from Allen's spiral-bound notebook that referred to Hires. The letter referred to that material as "additional documentation that helped form the basis of dismissal."

¶ 11 Hires and her Union representatives appeared before the school board on March 19, 2008, in executive session before the board voted on Hires' termination. Hires testified. After the board returned to open session, it voted to deny the grievance and adopt a resolution authorizing the notice of nonrenewal of Hires. In a letter dated March 19, 2008, Hires was notified that she would not be reemployed as a District employee for the ensuing 2008-09 school term.

¶ 12                                    II. ANALYSIS

¶ 13 On issues of law, we review the IELRB's findings *de novo*, while findings on issues of fact are deemed *prima facie* correct unless they are against the manifest weight of the evidence. *SPEED District 802 v. Warning*, 242 Ill. 2d 92, 111-12, 950 N.E.2d 1069, 1080 (2011); *Niles Township High School District 219 v. Illinois Educational Labor Relations Board*, 379 Ill. App. 3d 22, 26, 883 N.E.2d 29, 33 (2007) . A decision by an administrative agency on a mixed question of law and fact will not be reversed unless it is clearly erroneous. "An agency decision will be reversed because it is clearly erroneous only if the reviewing court, based on the entirety of the record, is 'left with the definite and firm conviction that

a mistake has been committed.' [Citation.] While this standard is highly deferential, it does not relegate judicial review to mere blind deference of an agency's order." (Internal quotation marks omitted.) *SPEED District 802*, 242 Ill. 2d at 112, 950 N.E.2d at 1080-81 (quoting *Board of Trustees of the University of Illinois v. Illinois Labor Relations Board*, 224 Ill. 2d 88, 97-98, 862 N.E.2d 944, 950-51 (2007)).

¶ 14 An agency's construction of a statute it administers will be given deference by a reviewing court, recognizing the expertise of the agency in the matters before it, unless the agency's decision is unreasonable or erroneous. *Mt. Vernon Education Ass'n, IEA-NEA v. Illinois Educational Labor Relations Board*, 278 Ill. App. 3d 814, 818, 663 N.E.2d 1067, 1071 (1996). An exception to the deference given the award occurs if the arbitrator goes beyond the terms of the agreement "to dispense his own brand of industrial justice." (Internal quotation marks omitted.) *Harrisburg*, 227 Ill. App. 3d at 211, 591 N.E.2d at 87. The judicial review of an arbitral award is extremely limited. A court is duty bound to enforce a labor-arbitration award if the arbitrator acts within the scope of his or her authority and the award draws its essence from the parties' collective-bargaining agreement. *American Federation of State, County & Municipal Employees v. Department of Central Management Services*, 173 Ill. 2d 299, 304-05, 671 N.E.2d 668, 672 (1996).

¶ 15 In his first award, the arbitrator noted that it is undisputed that the collective-bargaining agreement makes no express provision for or limitation on the dismissal of unit personnel for just, good, or proper cause or the like. However, several provisions have a bearing on the dispute, including the following:

"Article II, section 2.6. When a member of the bargaining unit is required to appear before the Board of Education concerning any disciplinary matter, the staff member shall be given reasonable prior written notice of the reasons for such meeting and shall be entitled to have a personal representative at said meeting, if so requested by employee."

Article IV, grievance procedure, section 4(a), also contained a provision that "The Arbitrator, in his opinion, shall not amend, modify, nullify, ignore or add to the provisions of the agreement." Article VIII, section 8.2, contained a complete-understanding clause: "The terms and conditions set forth in this Agreement represent the full and complete understanding between the parties. It is understood that all rights, powers, and authority of the Board and/or its administrative staff not specifically limited by the language of this Agreement are retained by the Board."

¶ 16 In *Harrisburg*, a school district had terminated a teacher from his extra-duty position as head basketball coach. The collective-bargaining agreement required a "due process" hearing, and we held the arbitrator had the power to determine that "due process" required a more formalized procedure than had been employed. *Harrisburg*, 227 Ill. App. 3d at 213, 591 N.E.2d at 88-89. However, we disagreed with the arbitrator's remedy, where he stated that it "would be insufficient to order only a hearing before the Board, allowing his removal to stand. To do so would assume that just cause for his dismissal exists ***." (Emphasis omitted.) (Internal quotation marks omitted.) *Harrisburg*, 227 Ill. App. 3d at 215-16, 591 N.E.2d at 90. The arbitrator had stated that " 'arbitrators commonly read just cause language into collective-bargaining agreements even if the explicit wording is not there.' " *Harrisburg*,

227 Ill. App. 3d at 215, 591 N.E.2d at 90. We held the arbitrator had gone beyond the terms of the collective-bargaining agreement and was dispensing " ' "his own brand of industrial justice." ' " *Harrisburg*, 227 Ill. App. 3d at 216, 591 N.E.2d at 90. We recognized that the benefits of our ruling were somewhat limited, because the district could still discharge the teacher from the extra-duty assignment without cause, but he "was entitled to some formality in a procedure in which he might have been able to persuade the Board to retain him." *Harrisburg*, 227 Ill. App. 3d at 214, 591 N.E.2d at 89.

¶ 17    In the present case, the arbitrator stated that "When a collective agreement requires a hearing it requires a meaningful hearing. It cannot be assumed *a priori* that by agreeing to § 2.6 the parties intended to require a potentially meaningless formalism." The arbitrator repeated his original holding that the District's decision to dismiss could not be "arbitrary or capricious," and his original finding that the proceeding before the school board was "deficient in the lack of notice, the opportunity to confront and defend, and in the want of a reasoned decision." If the District should move for Hires' termination after her reinstatement, "it must provide a statement of the specific acts or omissions–time, place, participants, and utterances–that it alleges *justify* her discharge." (Emphasis added.) *Harrisburg* recognized that where a district could discharge a teacher without cause, a hearing might be described as a meaningless formality, but it refused to allow the arbitrator to read a just-cause provision into the collective-bargaining agreement. The same is true in this case. The arbitrator has applied his own brand of industrial justice by reading a just-cause standard into the agreement, although he used other language.

¶ 18    In Illinois, absent a contractual provision to the contrary, employees are generally considered to be at will and may be discharged for any or no reason. *Michael v. Precision Alliance Group, LLC*, 2011 IL App (5th) 100089, ¶ 13, 952 N.E.2d 682, 686. The arbitrator recognized the collective-bargaining agreement here was silent on the issue of at-will employment, but he applied a unique method of contract interpretation:

> "[The] bargaining history leading up to contractual silence cannot be ignored. Once bargaining history is taken into account in its entirety the District's argument boils down to the claim that because it was unable to secure contractual recognition for totally unreviewable discretion to terminate probationary employees it therefore retained, by contractual silence, totally unreviewable discretion to terminate any-one and everyone. On its face the argument is a *non sequitur*."

The District's proposal was not one to secure discretion to terminate probationary employees; it sought to establish procedures for termination of nonprobationary employees similar to those set out in section 2.6. In any event, it is a mistake to ignore the language of a contract and focus on language that was not included. In Illinois, a written contract is presumed to include all material terms agreed upon by the parties, and evidence of prior negotiations is generally inadmissible. *K's Merchandise Mart, Inc. v. Northgate Limited Partnership*, 359 Ill. App. 3d 1137, 1143, 835 N.E.2d 965, 971 (2005). This is especially true when the contract, as here, contains a complete-understanding clause, also referred to as an integration clause. When a contract contains an integration clause, it is improper to consider extrinsic evidence of prior negotiations to create an extrinsic ambiguity. *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 465, 706 N.E.2d 882, 885-86 (1999). The arbitrator also

ignored the language of article IV, section 4(a), which prohibited him from adding to the language of the agreement.

¶ 19    The arbitrator states that he may interpret the collective-bargaining agreement by applying "industrial common law," the practices of the industry and the shop. It is true that the best way to interpret a contract is to give it the meaning the parties have given it. Under the Uniform Commercial Code (810 ILCS 5/2-202 (West 2008)), for example, course of dealing, usage of trade, and course of performance may be considered to explain or supplement the terms of an agreement. *K's Merchandise*, 359 Ill. App. 3d at 1144, 835 N.E.2d at 972. The arbitrator's decision here, however, is not supported by any past practice of the parties. Nor is it supported by interpretations of similar contract language in other cases.

¶ 20    The District complied with all the requirements of section 2.6 in this case. The decision to terminate Hires was made at the school board's open session on March 19, 2008. Hires was given written notice of that meeting on February 2, 2008, in a letter pointing out her problems in relating with elementary students. Before the March 19 meeting, Hires was allowed to meet with Allen and Superintendent Davies to discuss the reasons for the meeting. At that meeting Hires was accompanied by the Union president and was given the notes in her personnel file. Hires was later given copies of the pages from Allen's spiral-bound notebook. Hires and the Union disputed the allegations against her in their March 7 letter. If Hires and the Union had required further information, they could have asked for it. Another meeting took place on March 13. Finally, on March 19, Hires and her Union representatives appeared before the school board in executive session, and Hires testified. Only then did the school board go into open session and make its decision not to renew Hires' contract.

¶ 21    In his award on remand, the arbitrator determined that section 2.6's "written notice of the reasons" provision required specifics, "names, dates, and circumstances of the allegations, precisely what *facts* were reported of her and by whom." The arbitrator repeated his finding that the proceeding before the school board was "deficient in the lack of notice, the opportunity to confront and defend, and in the want of a reasoned decision." If the District should move for Hires' termination after her reinstatement, it would need to follow a number of steps, including "it must provide a statement of the specific acts or omissions–time, place, participants, and utterances–that it alleges justify her discharge." The arbitrator's conclusion that the procedure here was somehow "deficient" is clearly erroneous. The District did not act hastily. Hires was given repeated warnings, and attempts were made to help her. Hires was "given reasonable prior written notice of the reasons for" the March 19 meeting. Hires and her Union representatives met with District personnel several times in advance of the March 19 meeting and were furnished with the information they requested. Hires was allowed to testify at the March 19 meeting, at which her Union representatives were present.

¶ 22                                III. CONCLUSION

¶ 23    The arbitrator's decision, adopted by the IELRB, went beyond the clear language of the collective-bargaining agreement. The decision did not draw its essence from the collective-

bargaining agreement. The IELRB erroneously upheld the arbitrator's decision. For the foregoing reasons, we reverse the IELRB's opinion and order. The IELRB is directed to enter judgment in favor of the District.

¶ 24    Reversed.

¶ 25    JUSTICE McCULLOUGH, dissenting.

¶ 26    I respectfully dissent.

¶ 27    The IELRB committed no error in upholding the arbitrator's decision and ordering the District's compliance where the arbitrator's decision was drawn from the essence of the parties' collective-bargaining agreement.

¶ 28    The IELRB's decision should be affirmed.